**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **JEFFERY ARLT**, Defendant–Appellant, and **CHARLES DUNN**, Defendant

NO. 15676

(CR. NO. 90–0706)

AUGUST 6, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

264

OPINION OF THE COURT BY WATANABE, J.

Jeffery Arlt (Defendant) appeals his September 24, 1991 conviction of First Degree Robbery. Concluding that Defendant did not use force "in the course of committing theft" and that First Degree Robbery was thus not proved, we vacate Defendant's conviction below. However, as there is overwhelming evidence on the record that Defendant committed the lesser–included offense of Theft in the Fourth Degree, we remand the case to the First Circuit Court with instructions to enter a judgment convicting Defendant of Theft in the Fourth Degree and resentencing him accordingly.

## FACTS

The facts in this case are essentially undisputed. In February 1990, Defendant, who had recently turned eighteen, and his two friends, Charles and Chance Dunn, came to Hawai'i from California for a two–week vacation. On the evening of February 28, 1990, after consuming several drinks at a luau,[1] Defendant and his

---

[1] A luau is a "Hawai'ian feast, named for the taro tops always served at one." M. Pukui and S. Elbert, HAWAI'IAN DICTIONARY 214 (1986).

friends decided to cap off the evening with beer and tequila. The trio wandered into the Beach Market superette on Ena Road in Waikiki to purchase the liquor. When owner Suk Joo Kim (Kim) refused to sell the boys the liquor without proper identification, Defendant grabbed the bottle of tequila he had placed on the cash register counter and fled the store. Kim then pressed a silent alarm button and told the Dunn brothers to wait until the police arrived. The brothers, however, walked out of the store shortly thereafter. Kim then changed from slippers to sneakers, locked the store, and went looking for the boys. Eventually, he caught up with the two brothers in a parking lot about 100 meters from the store and asked them to sit down and wait on the sidewalk area. Charles Dunn remained seated, but Chance Dunn managed to run away.

Chance then found Defendant, and the two returned to Kim. Chance took the bottle from Defendant and placed it on a newspaper stand. When Kim asked for the bottle, Defendant picked up the bottle and held it out to Kim saying, "here is your bottle." A "very angry" Kim extended his hand to receive the bottle and said, "give me." August 8, 1991 Transcript at 14–15, 54–55, 177–178. At that point, Defendant thought that Kim was going to hit him. Defendant claims that he then swung the bottle in an attempt to deflect Kim's arm. However, Kim ducked and the bottle struck him on the head. The bottle broke, either when it struck Kim's head or when it fell to the ground after the blow.

The boys then fled in a panic and quickly hailed and jumped into a taxi. Subsequently, Kim caught up with the cab and jumped in front of it to block the boys' escape. The police arrived immediately thereafter and arrested Defendant and Charles.

After the boys were handcuffed, the police had them sit on the ground while awaiting transportation to the station. One of the officers remarked that there appeared to be blood on the shirts of all three boys. Defendant apparently overheard this statement and tried to "lick the blood" off his shirt. Defendant was ordered to

stop and he did. August 8, 1991 Transcript at 131, and August 9, 1991 Transcript at 14.

On April 24, 1990, Defendant was indicted on the charge of Robbery in the First Degree, a violation of Hawai'i Revised Statutes (HRS) § 708–840(1)(b)(i) (1985). After a jury trial in the First Circuit Court, Defendant was convicted as charged. Defendant was subsequently sentenced to eight years' incarceration as a youthful offender and ordered to pay $1,871.21 in restitution.

Defendant timely appealed, contending that the trial court committed reversible error in three respects. First, Defendant argues that there was insufficient evidence to find him guilty of First Degree Robbery. Defendant concedes that he may have been guilty of the separate offenses of theft and assault; however, Defendant insists that he is not guilty of the singular offense of robbery. Second, Defendant maintains that the trial court should have instructed the jury that they could have found him guilty of Assault in the Third Degree, which he contends is a lesser included offense of robbery. Finally, Defendant argues that the trial court should not have allowed the "blood–sucking" incident to be presented to the jury because such evidence was both prejudicial and irrelevant.

## DISCUSSION
### I.

Addressing, first, the admission of the blood–sucking evidence, we note initially that it is a well–settled rule that the trial court is vested with discretion regarding the admissibility of evidence at trial and such a decision will not be reversed absent an abuse. *State v. Nakamura*, 65 Haw. 74, 80, 648 P.2d 183, 187 (1982). The responsibility for maintaining the delicate balance between the probative value and prejudicial effect of any evidence lies largely within the discretion of the trial court, *State v. Iaukea*, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975), and even where error occurs in the admission of evidence, there will be no reversal

where, on the record as a whole, no prejudice to the appellant has resulted. *State v. Nakamura*, 65 Haw. at 80, 648 P.2d at 187.

Reviewed against this standard, we conclude that the trial court did not abuse its discretion by admitting testimony about the blood–sucking incident. The evidence was relevant to indicate Defendant's consciousness of his actions and his attempts to get rid of evidence that might link him to a crime. Any prejudicial effect that such testimony may engender does not, in our view, outweigh the relevancy of the testimony.

## II.

Defendant also argues that the trial court erred in refusing to submit to the jury his requested Jury Instruction No. 7. That instruction reads as follows:

A person commits the offense of Assault in the Third Degree is [sic] he:

a) Intentionally, knowingly, or recklessly causes bodily injury to another person.

The issue of whether Third Degree Assault is a lesser included offense of First Degree Robbery as prohibited by HRS § 708–840(1)(b)(i) was previously decided by this court in *State v. Doi*, 6 Haw. App. 115, 711 P.2d 736 (1985). In *Doi*, we held that the offense of Third Degree Assault, which requires a finding that the defendant inflicted bodily injury on the victim, is not included within the offense of First Degree Robbery under HRS § 708–840(1)(b)(i) because while that specific type of robbery requires the use of force, it does not require the infliction of bodily injury.

We therefore conclude that the trial court properly denied Defendant's Requested Instruction No. 7.

## III.

Defendant's main point on appeal is that there was insufficient evidence at the trial to convict him of Robbery in the First Degree.

Defendant was charged with violating HRS § 708–840(1)(b)(i) (1985), which provides:

**Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

. . . .

(b) He is armed with a dangerous instrument and:
   (i) He uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance[.]

In order to sustain a conviction under HRS § 708–840(1)(b)(i), four material elements must be proved beyond a reasonable doubt:

(1) That the defendant was in the course of committing theft;

(2) That the defendant was armed with a dangerous instrument;

(3) That the defendant used force against the person of anyone present;

(4) That the defendant did so with intent to overcome that person's physical resistance or physical power of resistance.

Defendant contends in substance that since the undisputed evidence shows that he stole the liquor bottle and found his way to a place of temporary safety without use or threat of force, and since any force or violence in the case was used only after he was attempting to return the liquor bottle to its owner, the crimes for which he should have been charged were, at most, theft and assault, but not the singular offense of robbery. In other words, Defendant contends that he was not "in the course of committing theft" when he used force against Kim, and, therefore, the elements of First Degree Robbery have not been proved.

The State, on the other hand, argues that the theft was still in progress when Defendant struck the store owner, Kim. The State speculates that after Defendant stole the tequila, he returned to "free" his friend, Charles, who would be able to identify Defendant to police. The State contends that Defendant used the tequila bottle, a dangerous instrument, so he could effect a perfect getaway. Hence, the entire occurrence was a continuing transaction and Defendant was guilty of robbery.

The contentions of the parties require us to closely examine the nature of the crime of robbery, under the Hawai'i Penal Code.

Under the common law, in order for a defendant to be guilty of robbery, the prosecution had to prove that the defendant took the property by means of force or violence or by putting the victim in fear. The force or intimidation employed was the gist of the offense. *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976). *See also State v. Ah Choy*, 70 Haw. 618, 620–21, 780 P.2d 1097, 1099–1100 (1989); 67 AM. JUR. 2D *Robbery* § 22; and IV TORCIA, WHARTON'S CRIMINAL LAW § 474 (14th ed. 1981), for a discussion of this general rule. The courts did not agree, however, as to whether the use of force or intimidation to retain possession of property taken or to facilitate escape, rather than to physically take the property, supplies the element of force or intimidation necessary to the offense of robbery. 67 AM. JUR. 2D, *supra*, § 28.

Some courts held that the use of force or intimidation makes the offense a robbery only if it is used prior to or concurrently with the physical act of taking the property. Thus, the use of force closely following the moment when a thief gets his hands on the property may support a conviction of robbery on the ground that the force and taking were contemporaneous or parts of a single transaction. However, the use of force or intimidation to retain the property or attempt to escape with it will not supply the element of force or intimidation necessary to make the offense a robbery.

Other courts, employing a different perspective, generally regarded the occurrence as a continuing transaction. These courts

thus held that the use of force or intimidation to retain property, or to effect the retention of property in an escape attempt, or even to escape after property taken has been abandoned, does supply the element of force or intimidation necessary to make the offense a robbery. 67 AM. JUR. 2D, *supra*, § 28; Kristine Cordier Karnezis, Annotation, *Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather than in Taking Property, as Element of Robbery*, 93 A.L.R.3D 643 (1979); WHARTON'S CRIMINAL LAW, *supra*, § 478.

This conflict in case law was obviated by the Hawai'i legislature when it enacted the Hawai'i Penal Code, patterned after the Model Penal Code, in 1972. Specifically, the legislature enacted HRS § 708–842, which defines the phrase "in the course of committing a theft" for purposes of a robbery offense, as follows:

> **Robbery; "in the course of committing a theft."**
> An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft, in the commission of theft, *or in the flight after the attempt or commission.* [Emphasis added.]

The commentary to said section, which, pursuant to HRS § 701–105 may be used as an aid in understanding the provision of the Penal Code, states:

> The nature and operation of this section is concisely explained by the Model Penal Code:
>> This provision is unusual only insofar as it makes classification of robbery depend in part on behavior after the theft might be said to have been accomplished. The thief's willingness to use force against those who would restrain him in flight strongly suggests that he would have employed it to effect the theft had there been need for it. No rule–of–thumb is proposed to

> delimit the time and space of "flight," which should be interpreted in accordance with the rationale. The concept of "fresh pursuit" will be helpful in suggesting realistic bounds between the occasion of the theft and a later occasion when the escaped thief is apprehended.
>
> Previous Hawai'i statutory law failed to provide a standard for the determination of the duration of the "theft" aspect of a robbery—a standard which is needed in order to determine when the employment of force or threatened force converts the "theft" into a "robbery." [Footnote omitted.]

The legislature thus clearly intended that in Hawai'i, a robbery conviction may be predicated on the use or threatened use of force or violence to retain possession of stolen property during the flight after the theft. On this basis, the State argues that Defendant's flight after the theft commenced when he left the market and did not end until he got caught in the taxi. Defendant was therefore in the course of committing theft when he struck Kim with the stolen bottle.

The undisputed evidence indicates, however, that when Defendant fled the store with the stolen bottle, he used absolutely no force against Kim. Further, when Kim was struck, Defendant was not fleeing with the stolen property, but was actually returning the bottle to Kim. The bottle had previously been taken from Defendant's hands and placed on a newspaper stand. Moreover, Kim admitted that he asked Defendant to give him the bottle and stretched his hand to receive the bottle, before he was struck. Based on the factual circumstances shown on the record before us, we conclude that the theft of the tequila bottle was completed when Defendant snatched the bottle and left the store's premises without the use of force or threatened use of force. The force that Defendant subsequently used upon Kim did not occur "in the course of

committing theft," but while Defendant was returning the bottle to Kim and, accordingly, did not convert the theft to robbery.

Other courts, confronted with similar situations, have reached a similar conclusion. In *State v. Jackson*, 40 Or. App. 759, 596 P.2d 600 (1979), for example, the defendant, using a tire iron, had broken open the glove box of victim's car which contained over $500, but had not taken it. While the victim was pulling the defendant from the car, the defendant hit the victim with a tire iron a number of times. The victim then wrested the tire iron from the defendant, who fled. Oregon, like Hawai'i, had adopted the approach of the American Law Institute (ALI) Model Penal Code under which theft becomes robbery if force is used either in the taking or in the retention of the property taken. Oregon had also expanded upon the ALI version by including attempts to commit theft within the scope of the crime of robbery. In concluding that robbery was not proved, the Oregon Court of Appeals said:

> This case does not involve force used in the course of attempting to commit theft. Rather, it involves force used in flight following an abandoned attempt to commit theft. There is no "retention" and hence no extension of the course of the attempt into the flight stage. Because the defendant had abandoned his attempt to commit theft prior to the use of force, his acts do not come within the requirement of the statute that force be used "in the course of committing or attempting to commit theft." In other words, for there to be robbery, there must be a relationship, not a mere concurrence, of force and theft. The revised statute merely extends that idea to the accomplishment of attempted theft and to the retention of the fruits of successful theft; it does not change the requirement that there be a connection between the two elements. Because in this case the force was not used until after the completion and termination of the attempted

theft and because there were no fruits of the theft for defendant to use force to retain, the force did not occur "in the course of committing or attempting to commit theft."

596 P.2d at 602.

Similarly, in *Ex parte Sapp*, 497 So. 2d 550 (Ala. 1986), the Supreme Court of Alabama held that robbery was not proved where a defendant left a store with a jacket, returned approximately five or ten minutes later wearing the jacket, and engaged in violence in attempting to escape thereafter. Applying a statute similar to HRS § 708–840(1)(b), the court held that:

> [t]he armed force . . . was not used "in the course of committing" the theft or "in immediate flight after the . . . commission," but took place after the theft itself clearly had ceased. In short, the statutes applicable here have not transposed theft into robbery.

497 So. 2d at 551.

Because there is insufficient evidence on the record to indicate that Defendant was "in the course of committing a theft" when he struck Kim, the elements of First Degree Robbery have not, as a matter of law, been proved. Defendant's conviction of First Degree Robbery must therefore be vacated.

## IV.

The issue then arises as to what remedy is appropriate to correct Defendant's erroneous robbery conviction.

Other state appellate courts, relying on either express statutory authority or inherent supervisory authority, have held that where there is a reversal of a conviction for insufficiency of evidence, the conviction can be modified to reflect a lesser crime for which there is evidence and which the fact finder necessarily found occurred, if the lesser crime was alleged in the accusatory instrument. These courts have either remanded the cases to the trial court, with directions to enter a judgment of conviction of the lesser crime, or have modified the judgment and remanded only for resentencing. *See,*

*e.g.*, *People v. Tubby*, 34 Cal. 2d 72, 207 P.2d 51 (1949) (first degree murder to second degree murder); *Banks v. State*, 708 S.W.2d 460 (Tex. Cr. App. 1986); *State v. Jackson*, 596 P.2d at 602 (first degree robbery to attempted theft in the second degree); *State v. Lampman*, 342 N.W.2d 77 (Iowa App. 1983) (first degree burglary to second degree burglary); *State v. Liles*, 11 Wash. App. 166, 521 P.2d 973 (1974) (possession of heroin with intent to deliver to possession of heroin); *Goddard v. State*, 458 So. 2d 230 (Fla. 1984) (organizing the theft of property to trafficking in stolen property); *State v. Gunn*, 89 Mont. 453, 300 P. 212 (1931) (first degree murder to second degree murder); *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420 (1924) (murder to manslaughter); *Kilpatrick v. State*, 75 Okla. Crim. 28, 128 P.2d 246 (1942) (first degree rape to assault with intent to commit rape); *State v. Jackson*, 198 Minn. 111, 268 N.W. 924 (1936) (second degree murder to third degree murder); *People v. Monaco*, 14 N.Y.2d 43, 248 N.Y.S.2d 41, 197 N.E.2d 532 (1964) (second degree murder to first degree manslaughter); *Ritchie v. State*, 243 Ind. 614, 189 N.E.2d 575 (1963) (rape to assault and battery with intent); *State v. Porello*, 138 Ohio St. 239, 34 N.E.2d 198 (1941) (first degree murder to manslaughter).

At the federal level, there is a specific statute, 28 U.S.C.S. § 2106, which provides:

> The Supreme Court or any other appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

Based on such authority, numerous courts of appeal have held that when the evidence is insufficient to support the greater offense, but sufficient to support a conviction on the lesser–

included offense, an appellate court may vacate the sentence and remand for modification of the judgment of conviction and resentencing on the lesser–included offense. *United States v. Dickinson*, 706 F.2d 88 (2d Cir. 1983); *Government of Virgin Islands v. Josiah*, 641 F.2d 1103 (3d Cir. 1981); *Austin v. United States*, 382 F.2d 129 (D.C. Cir. 1967); *United States v. LaMartina*, 584 F.2d 764 (6th Cir. 1978), *cert. denied*, 440 U.S. 928 (1979).

The general practice is described in 5 AM. JUR. 2D *Appeal and Error* §§ 937 and 938 partly as follows:

> Under the modern practice prevailing in most jurisdictions, the appellate courts have the power, in a proper case, to modify rather than reverse a judgment, where such action seems appropriate. The judgment may then be affirmed as modified. If it is for the best interest of both parties to modify the judgment and end protracted litigation, the court will usually do so. . . .
>
> * * *
>
> The power to modify judgments extends to criminal cases and authorizes a modification or correction, by reduction, of the sentence entered below, and its affirmance as modified. . . . Under some statutes the reviewing court, in a proper case, may modify a judgment of conviction below and affirm it as a conviction of a lesser degree of the offense charged, or of a lesser crime included therein, where the errors do not affect the conviction of the lesser offense.

In 5B C.J.S. *Appeal & Error* § 1874, at 322–25, the general rule is discussed as follows:

> Even though the courts may be reluctant to do so, by virtue of statutory provisions, rules of court, or the settled practice of the courts, an appellate court usually may modify or correct the judgment, order or decree appealed

from, where the facts on which the modification is to be based are sufficiently shown, or are conceded or admitted by the parties, or where the parties agree to a modification. . . .

In Hawai'i, the Intermediate Court of Appeals, pursuant to HRS § 602–57, has concurrent jurisdiction with the supreme court on matters set forth in HRS § 602–5(1) through (7) (1985). This includes the authority described in paragraph (7) to:

> make and award such judgments, decrees, orders and mandates, issue such executions and other processes, and *do such other acts and take such other steps as may be necessary* to carry into full effect the powers which are or shall be given to it by law or *for the promotion of justice in matters pending before it.* [Emphasis added.]

Since there is no statute or constitutional provision in Hawai'i which specifically vests in the appellate courts the express authority to affirm, reverse, remand, vacate, or set aside any judgment, decree, or order of a court brought before them, such authority presumably derives from the above provision.

In *Hawai'i Public Employment Relations Board v. Hawai'i State Teachers Ass'n*, 55 Haw. 386, 520 P.2d 422 (1974), the Hawai'i Supreme Court had occasion to consider whether, pursuant to HRS § 602–5(7), it had the authority to mitigate or reduce fines imposed for civil contempt "if the promotion of justice could be better enhanced." Concluding that it did, the supreme court remanded the case to the trial court for the entry of an amended judgment reducing the fines from $190,000 to $100,000. 55 Haw. at 393, 520 P.2d at 427.

In our opinion, HRS § 602–5(7) also allows an appellate court to modify a trial court's judgment of conviction if the interests of justice would be thereby promoted.

In the case at bar, the indictment charged that Defendant was "in the course of committing theft" when he used force against

Kim with intent to overcome Kim's physical resistance or his power of physical assistance, thereby committing Robbery in the First Degree. The jury's verdict that Defendant was guilty as charged makes clear that it found him guilty of Theft, a lesser–included offense of First Degree Robbery. Additionally, the trial court specifically instructed the jury that it could find Defendant guilty of Theft in the Fourth Degree, which was an included offense of Robbery in the Second Degree, which was in turn an included offense of Robbery in the First Degree. Therefore, Defendant had a fair adjudication of guilt on the crime of theft. Finally, Defendant has conceded that he was guilty of theft during his testimony at trial. There is thus sufficient evidence on the record to find Defendant guilty of Theft in the Fourth Degree.

We believe there is also sufficient evidence on the record to find Defendant guilty of Assault in the Third Degree. However, since Defendant was not specifically charged with Assault in the Third Degree, and since, as we have previously concluded, Assault in the Third Degree is not a lesser–included offense of Robbery in the First Degree under HRS § 708–840(1)(b)(i), Defendant was never fairly put on notice that he could be convicted of assault. Therefore, we are unable to direct an entry of a judgment convicting Defendant of Assault in the Third Degree.

## CONCLUSION AND ORDER

We therefore vacate Defendant's conviction as to First Degree Robbery and, pursuant to our authority under HRS § 602–5(7), remand this case to the First Circuit Court with instructions to enter a judgment convicting Defendant of Theft in the Fourth Degree and resentencing him accordingly.

*Peter Van Name Esser* and *Willard J. Peterson* (Peterson & Esser, of counsel) on the briefs for defendant–appellant.

*Melinda K. Mendes*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.