910 P.2d 129

**Robert C. MILLER, Petitioner–Appellant,**

v.

**Irwin TANAKA, Administrative Director
of the Courts, State of Hawai'i,
Respondent–Appellee.**

No. 17148.

Intermediate Court of Appeals of Hawai'i.

Nov. 30, 1995.

Order Denying Reconsideration
Dec. 29, 1995.

Certiorari Denied Jan. 16, 1996.

As Amended March 15, 1996.

Steven T. Barta, on the brief, Honolulu, for petitioner-appellant.

Edwin L. Baker, Deputy Attorney General, Honolulu, for respondent-appellee (no brief filed).

BURNS, C.J., WATANABE and ACOBA, JJ.

ACOBA, Judge.

Petitioner–Appellant Robert C. Miller (Petitioner) appeals from the district court judgment filed on May 20, 1993, affirming the administrative revocation of his driver's license pursuant to Hawai'i Revised Statutes (HRS) chapter 286, Part XIV (1993).[1] Petitioner raises several points on appeal. We initially note that the administrative director of the courts (the Director), Respondent–Appellee, did not file an answering brief. Exercising our discretion, we believe that five of Petitioner's points on appeal must be addressed.[2] Based on our review, we vacate the judgment filed on May 20, 1993 and remand the case.

1. Hawai'i Revised Statutes (HRS) § 286–260(a) (1993) mandates that after the administrative director of the courts (the Director) sustains the administrative revocation of an arrestee's driver's license, the arrestee may judicially appeal the revocation, but the appeal does not stay the revocation nor may a court stay the revocation pending the appeal.

HRS § 286–261(b) (1993) sets out revocation periods ranging from three months to life. Under HRS § 286–264 (1993), however, the Director in his or her discretion, may issue a conditional permit to the arrestee, allowing restricted driving privileges under certain conditions, provided that a minimum thirty-day revocation is imposed.

Here, the hearing officer's decision mandated that Petitioner–Appellant Robert C. Miller's (Petitioner) license be revoked from March 12, 1993 to June 11, 1993. The conditional permit issued was effective from April 11, 1993 to June 11, 1993. Petitioner's license was absolutely revoked for a period of one month. Thus, an arrestee will be deprived of his or her driver's license for a significant period of time even if the revocation is ultimately judicially reversed. It is unlikely that judicial review can be completed before the expiration of the minimum thirty-day revocation period in HRS § 286–264.

2. Petitioner raises six points on appeal. Petitioner's sixth point, contending that the placement of the Administrative Driver's License Revocation Office (ADLRO) in the Judiciary violates article V, section 6 of the Hawai'i State Constitution (the separation of powers doctrine), was rejected by the Hawai'i Supreme Court in Biscoe v. Tanaka, 76 Hawai'i 380, 878 P.2d 719 (1994). Holding that the administrative revocation program for revocation of drivers' licenses does not violate the separation of powers doctrine, id. at 382–83, 878 P.2d at 722–23, the Biscoe court reasoned that this program does not require the judiciary officers to exercise executive or nonjudicial powers because "[t]he task of reviewing evidence and determining matters such as the existence of reasonable suspicion, probable cause, and proof of facts by a preponderance of the evidence are clearly judicial in nature...." Id. at 383, 878 P.2d at 722.

## I.

Petitioner first contends that the Director erred in continuing the administrative hearing at which the Director [3] affirmed the revocation of his driver's license. This question merits extended discussion.

HRS § 286–259(a) and (j) require that an administrative hearing to review the Director's administrative revocation of a person's driver's license must be scheduled to begin no later than twenty-five days from the date of the notice of administrative revocation, unless good cause is shown for a continuance.

§ 286–259 **Administrative hearing.** (a) If the director administratively revokes the arrestee's license after administrative review, *the arrestee may request an administrative hearing to review the decision* within five days of the date the administrative review decision is mailed. *The hearing shall be scheduled to commence no later than twenty-five days from the date the notice of administrative revocation was issued.* The director may continue the hearing only as provided in subsection (j).

. . . .

(j) *For good cause shown, the director may grant a continuance* either of the commencement of the hearing or of a hearing that has already commenced. If a continuance is granted at the request of the director, the director shall extend the validity of the temporary permit for a period not to exceed the period of the continuance. If a continuance is granted at the request of the arrestee, the director shall not extend the validity of the temporary permit. For purposes of this section a continuance means a delay in the commencement of the hearing or an interruption of a hearing that has commenced other than for recesses during the day or at the end of the day or week.

(Emphases added.)

■ The requirement that the administrative hearing take place no later than twenty-five days from the notice of revocation is mandatory, and the failure to follow it without good cause "voids the administrative revocation of [a] driver's license...." *Aspinwall v. Tanaka,* 9 Haw.App. 396, 405, 843 P.2d 145, 149 (1992), *cert. denied,* 74 Haw. 651, 845 P.2d 1193 (1993).

On February 5, 1993, Petitioner submitted a request for an administrative hearing to review the Director's revocation of his driver's license. The hearing was scheduled by the Administrative Driver's License Revocation Office (ADLRO) for February 19, 1993, some twenty-three days after the Notice of Administrative Revocation was issued. On February 19, 1993, the ADLRO continued the hearing to March 11, 1993, setting the hearing forty-three days after the Notice of Administrative Revocation. The Director sent a letter dated February 19, 1993 to Petitioner notifying him of the continuance. A form entitled "Request for Continuance of Administrative Hearing and Extension of Temporary Permit" is part of the record on appeal. It indicates the continuance was a "Director's continuance" and the reason for continuing the hearing was stated on the form as follows: "Due to the unavailability of hearing officers (family emergency and illness), hearing being continued by the ADLRO. ADLRO to resubpoena witnesses." The statement was signed by a Wesley Oasa (Mr. Oasa) as the "Requestor" and "for [the] Chief Adjudicator" and dated February 19, 1993. The statement was admitted into evidence over Petitioner's objection.

At the hearing held on March 11, 1993, Petitioner's counsel objected to the continuance of the hearing to March 11, 1993. Petitioner's counsel questioned the lack of specific facts underlying the request for continuance and indicated that Petitioner would have been available for the hearing at any time on February 19, 1993 and on the following day. Because the statement had been admitted over Petitioner's objection, Petitioner's counsel requested the opportunity to cross-examine Mr. Oasa, the

---

3. HRS § 286–251 (1993) defines "Director" as "the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews or hearings[,]" and in this case a hearing officer was appointed to conduct the hearing.

maker of the statement, on the facts supporting the continuance.

[PETITIONER'S COUNSEL]: ... [F]irst of all we object to the characterization of this hearing having been continued. It never began; so I think the proper characterization is that the hearing date had been continued. And as you indicated—

HEARING OFFICER: Alright [sic].

[PETITIONER'S COUNSEL]:—had been continued from February 19. *We object to that continuance.* We were notified on the 19th that the hearing would not take place for the reasons you stated. However, *no offer was made as to which officers were gone, how many were gone, how many were still at the ADLRO, and what the remaining schedule or calendar was for the rest of the day. We would have been available to come any time during the 19th for that hearing.*

*In addition to that, we would have been available to come the following day,* the following working day. [Petitioner] is entitled to a hearing within 25 days; *no reason has been offered as to why a hearing could not have been scheduled within that 25 day time period, the 19th not being the 25th day.*

Additionally at this time *I would like an opportunity to examine the maker of that statement which is in the record which you have admitted into evidence over our objection.* That document which says that the Hearings Officers were unavailable. We would ask you now [for] the opportunity to call [Mr. Oasa] in and examine him to determine the exact situation.

HEARING OFFICER: Alright [sic]. What do you want to ask him?

[PETITIONER'S COUNSEL]: I wish to ask him which Hearings Officers were present on the 19th, which—how many cases were scheduled. I'm sure he has a calendar which has the ... schedule for that day. And I would like to thereby determine independently whether or not there was an opportunity to have [Petitioner's] case heard on the 19th. I would then like to question him regarding the avail-

ability of dates within the 25 day time period but after the 19th.

(Emphases added.)

The hearing officer pointed to time constraints, indicated there was no "issue," and, therefore, denied the request to examine Mr. Oasa.

HEARING OFFICER: Okay, given the ... administrative requirements of running this program, time constraints and so forth, I don't see an issue here and therefore will deny the request to examine Mr. Oasa who is the maker [sic] of that continuance that you had earlier cited and will of course note your objections to that.

■ In *Aspinwall,* this court referred to the legislative history of HRS chapter 286, which indicated that the use of a continuance should only be a "unique exception" to the twenty-five-day requirement in HRS § 286–259(a). *Aspinwall,* 9 Haw.App. at 404, 843 P.2d at 149. HRS § 286–259(j) states that the Director may grant a continuance "[f]or good cause *shown.*" (Emphasis added.) This "requirement expressly mandates the Director to show good cause on the record so that, upon judicial review under HRS § 286–260, the court can decide whether the 'cause shown' is 'good,' thereby determining HRS [§] 286–260(c)'s question [of] whether 'the director exceeded ... statutory authority' when he [or she] continued the scheduled hearing." *Id.* at 402–03, 843 P.2d at 148.

■ Because HRS chapter 286 and its legislative history do not provide a definition of "good cause," we look to other sources for guidance. " 'Resort to legal or other well accepted dictionaries is one way to determine the ordinary meaning of certain terms [not statutorily defined].' " *State v. Chen,* 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994) (quoting *Rivas v. State,* 787 S.W.2d 113, 115 (Tex.Ct.App.1990)). The term "good cause" has been defined to mean "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *Black's Law Dictionary* 692 (6th ed. 1990). "Good cause" also "depends upon [the] circumstances of [the] individual case, and [a] finding of its existence lies largely in [the]

discretion of [the] officer or court to which [the] decision is committed." *Id.*

This definition comports with Hawai'i cases interpreting the term "good cause."

> As a general rule, "good cause" means a substantial reason; one that affords a legal excuse. There is no fixed rule for determining good cause for delay of trial which does not violate accused's constitutional and statutory rights, the matter being one for judicial determination, and the question of what constitutes good cause for a delay in bringing accused to trial is primarily for the discretion of the trial court.

*State v. Estencion,* 63 Haw. 264, 267, 625 P.2d 1040, 1042–43 (1981) (citations omitted) (emphasis added). *See also Noor v. Agsalud,* 2 Haw.App. 560, 563, 634 P.2d 1058, 1060 (1981) (in an employment context, relevant statute defining "leaving of work" for "good cause where it is for a real, substantial or compelling reason[,]" provided a "common sense construction of the term 'good cause' ").

▮ Because HRS § 286–259(j) provides that the Director "may" grant a continuance for good cause shown, the statute plainly vests the Director with the discretion to grant or deny a continuance. Consequently, on appeal, the Director's decision to grant a continuance for good cause shown under HRS § 286–259(j) is reviewed under the abuse of discretion standard. *See Sapp v. Wong,* 62 Haw. 34, 40, 609 P.2d 137, 142 (1980) (trial court's discretionary authority to grant or deny a continuance is subject to review under the abuse of discretion standard). *Cf. In re Doe,* 79 Hawai'i 265, 273, 900 P.2d 1332, 1340 (App.1995) ("the finding of 'cause' under [Hawai'i Rules of Penal Procedure] Rule 12(f) which permits late filing of criminal pretrial motions rests within the sound discretion of the court, and on appeal, we review the court's decision for abuse of discretion.").

▮ In *Kernan v. Tanaka,* 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), the Hawai'i Supreme Court indicated that a driver's license is property entitled to protection under the due process clauses of the United States and Hawai'i Constitutions. While it is necessary that the record reflect the reasons for the continuance of the administrative hearing, once the basis for the continuance is challenged, we believe it is imperative that Petitioner have the opportunity to controvert the Director's finding that the cause shown is "good." The only basis for the continuance here is the general statement on a preprinted form that hearing officers were not available because of "family emergency and illness." Because a continuance not shown to be for good cause would void the revocation of his driver's license, it was crucial to Petitioner that he have the opportunity to demonstrate that the continuance was not supported by facts proving good cause. An examination of the person claiming that "good cause" existed was relevant and material to establish, from Petitioner's point of view, that good cause did not exist. If Petitioner is denied the opportunity to examine this material witness, he could be deprived of a constitutionally protected property interest in an invalid proceeding. *See Kernan; Aspinwall.*

HRS § 286–258(f) presupposes Petitioner's right to cross-examine witnesses at the administrative hearing. It provides that "the [Director's] decision [administratively revoking a driver's license] shall state that the arrestee may be represented by counsel at the [administrative] hearing, submit evidence, give testimony, and *present and cross-examine witnesses . . . .*" (Emphasis added.) The legislature intended the petitioner to have the opportunity to cross-examine witnesses and present a defense at the administrative hearing, providing that: "the arrestee is scheduled for a hearing where he or she may be represented by counsel, face his or her accuser, cross examine witnesses and present a defense." Sen.Conf.Comm.Rep. No. 137, in 1990 Senate Journal, at 825. Moreover, in upholding the constitutionality of HRS chapter 286 against the claim that a prehearing revocation of a driver's license violated procedural due process, our supreme court pointed out that HRS chapter 286 satisfies due process requirements because it allows the arrestee to "challenge ... statements presented against him [or her and] to confront those who submitted statements and

reports." *Kernan*, 75 Haw. at 28, 856 P.2d at 1221 (citation omitted).

> Hawaii's [Hawai'i's] procedure allows the arrestee to correct any mistakes that may have been made by the director as well as *to challenge* the reports and *statements presented against him [or her]*. *See* HRS §§ 286–258(f) and 259(d). *The arrestee is also given the opportunity to confront those who submitted statements* and reports. These procedures provide a reasonable and reliable basis for ascertaining the facts.

*Id.* at 27–28, 856 P.2d at 1221 (citation omitted) (emphases added).

Under rudimentary requirements of due process, Petitioner was entitled to the opportunity to rebut the statement of good cause. The failure to afford Petitioner the right to cross-examine Mr. Oasa about the basis for the continuance violated Petitioner's due process rights, because he was precluded from confronting a person whose statement was received in evidence.[4]

Accordingly, we hold that at the administrative hearing held under HRS § 286–259, an arrestee is entitled, in presenting a defense, to challenge and thus, to examine (or cross-examine) the material witness on the question of whether there was good cause to continue the administrative hearing pursuant to HRS § 286–259(j). By denying Petitioner the right to cross-examine the person offering the reason for the continuance, the Director acted in an arbitrary manner. HRS § 286–260(c).

In this case, the Director failed to allow Petitioner to examine Mr. Oasa about the basis for the continuance. Because we have held that Petitioner was entitled to examine Mr. Oasa on the facts supporting the reason for the continuance, we cannot, in the absence of the resolution of Petitioner's challenge, conclude from the record that there was "good cause" for a continuance.

We briefly consider the four other points Petitioner raises.

## II.

Petitioner requested the Director to issue subpoenas to police officers R. Stepien (Officer Stepien) and C. Skaggs (Officer Skaggs). Officer Stepien administered the Horizontal Gaze Nystagmus test to Petitioner and submitted a report on his observations. Officer Skaggs witnessed the field sobriety test and signed the checklist used in administering the test to Petitioner. The Director's refusal to issue subpoenas to these incident witnesses was clear error.

HRS § 286–259(g) provides in pertinent part that "[u]pon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing." In addition, HRS § 286–259(d)(4) provides in pertinent part that "[t]he director shall conduct the hearing and have authority to . . . [i]ssue subpoenas[.]" In *Park v. Tanaka*, 75 Haw. 271, 275, 859 P.2d 917, 920 (1993), the Hawai'i Supreme Court explained that, "when both HRS §§ 286–259(d) and 286–259(g) are read together, it is clear that, in addition to the officers who are required to be subpoenaed, the director may issue subpoenas to other officers or individuals."

Subsequently, in *Biscoe v. Tanaka*, 76 Hawai'i 380, 385, 878 P.2d 719, 724 (1994), the court declared that "the issuance of subpoenas other than those required under HRS § 286–259(g) is left to the discretion of the director." The *Biscoe* court, however, advised that "to ensure that an ar-

---

4. As we state in Part III, the Director is only mandated to enter the arrestee's prior alcohol enforcement contacts and the sworn statements of law enforcement officials referred to in HRS § 286–257 (1993) into evidence. Mr. Oasa's statement was not required to be received in evidence under the statutes. Petitioner objected to the statement's receipt in evidence. Thus, until the statement was received in evidence over Petitioner's objection, the issue of cross-examina-

tion and any need for a subpoena did not arise. Moreover, once challenged, the burden was on the Director, since the continuance was a "Director's continuance," to establish good cause for the continuance. Of course, the Director could have produced or subpoenaed Mr. Oasa for that purpose. In any event, the hearing officer did not reject Petitioner's contention because of any need for a subpoena but because the hearing officer did not "see an issue."

restee's rights are adequately protected, the director should issue all requested subpoenas unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient." *Id.* Furthermore, "[i]f a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion." *Id.*

■ Officers Stepien and Skaggs obviously possessed evidence relevant to the question of Petitioner's intoxication. Consequently, the refusal to issue subpoenas for their presence constituted a clear abuse of discretion.

## III.

Petitioner argues that the Director erred in admitting into evidence all the documents in Petitioner's "file" at the administrative hearing.

■ HRS § 286–259(d)(3) provides that "[t]he director shall conduct the hearing and have authority to ... [r]eceive and determine the relevance of evidence[.]" HRS § 286–259(d)(3) does not otherwise limit the discretion of the Director in determining what evidence is relevant. Under the statutory language of HRS § 286–259(d)(3), the Director retains the discretion to determine what evidence is relevant, therefore, on appeal, the Director's decision to receive evidence is reviewed for abuse of discretion. *See Sapp v. Wong,* 62 Haw. 34, 609 P.2d 137 (1980); *In re Doe,* 79 Hawai'i 265, 900 P.2d

1332 (App.1995). The only mandates imposed on the Director, in this regard, are that "[t]he arrestee's prior alcohol enforcement contacts shall be entered into evidence[,]" HRS § 286–259(f), and "[t]he sworn statements [of law enforcement officials referred to] in section 286–257 shall be admitted into evidence." HRS § 286–259(g).

■ In the present case, the Director admitted Petitioner's entire "file" into evidence. However, the record is unclear as to whether the items in the "file" were statutorily required to be admitted into evidence. The hearing officer simply stated that she would "admit as evidence and make a part of the record all documents in the director's file." Petitioner's counsel objected to "admitting all the documents in the file," but fails, on appeal, to identify what items in the "file" were objectionable or to set forth the prejudice, if any, which flowed from the admission of any specific document into evidence as part of Petitioner's "file." Petitioner alleges, *inter alia,* that the documents "violate [Petitioner's] rights to confront the makers of the documents since the ADLRO has in fact denied [Petitioner's] ... request for subpoenas for some of the makers of those documents." Assuming that Petitioner was referring to the sworn statements by the arresting officer, the intoxilyzer operator, and the intoxilyzer supervisor, it is plain under HRS § 286–259(g) that sworn statements of law enforcement officials "shall be admitted into evidence" pursuant to HRS § 286–257(a)(1),[5] (2),[6] and (3).[7] Or, if Peti-

---

**5.** HRS § 286–257(a)(1) (1993) states in pertinent part:
 (1) A copy of the arrest report and the sworn statement of the arresting officer stating facts which establish that:
 (A) There was reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock established and operated in compliance with sections 286–162.5 and 286–162.6;
 (B) There was probable cause to believe that the arrestee had been driving, operating, or in actual physical control of the motor vehicle while under the influence of intoxicating liquor;
 (C) The arrestee was informed of the sanctions of this part, that criminal charges may be filed, and the consequences of refusing to be tested for concentration of alcohol in the blood; and
 (D) The arrestee agreed to be tested[.]

**6.** HRS § 286–257(a)(2) (1993) states in pertinent part:

 (2) The sworn statement of the person responsible for maintenance of the testing equipment stating facts which establish that pursuant to section 321–161 and rules adopted thereunder:
 (A) The equipment used to conduct the test was approved for use as an alcohol testing device in this State;
 (B) The person had been trained and at the time the test was conducted was certified and capable of maintaining the testing equipment; and
 (C) The testing equipment used had been properly maintained and was in good working condition when the test was conducted[.]

**7.** HRS § 286–257(a)(3) (1993) states in pertinent part:

tioner was referring to the statement of Mr. Oasa and the statements of Officers Stepien and Skaggs, we have addressed those issues in Part I and Part II, *supra.* Under the circumstances, therefore, we conclude that the Director did not abuse his discretion in this instance.

## IV.

### A.

█ Petitioner raises four issues with respect to the arresting officer's sworn statement. The first issue is whether the officer's sworn statement was defective because it was not "in fact, sworn to." In *Kernan v. Tanaka,* 75 Haw. 1, 32, 856 P.2d 1207, 1223 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), the Hawai'i Supreme Court interpreted the requirement for sworn statements in HRS § 286–257(a)(1)–(3), holding that:

> *The statute requires sworn statements, not statements given under oath or even notarized statements.* The lack of statutory language creating these additional requirements raises a presumption that a statement sworn to by the officer is sufficient. The ... statement[ ] submitted in ... the Appellant['s] case[ ] *bore the signature of that person and the statement, "I, (officer's name), swear that the following is true and correct." The statute requires nothing more.*

(Emphases added). The court reasoned that, "given the criminal penalty for making a false statement and the arrestee's ability to require the officer to testify under oath, ... sufficient mechanisms exist[ed] to insure due process and fairness in the presentation of facts to ADLRO officers." *Id.* at 33, 856 P.2d at 1223. The arresting officer's statement in the instant case was "sworn to" in the same manner as the statement in *Ker-*

nan. Thus, there was not any necessity for the arresting officer's sworn statement to be "in fact, sworn to" as Petitioner contends. *See Kernan.*

### B.

█ In *Kernan,* the court found that in the absence of the police report, "[t]he arresting officer's sworn statement, by itself, establishes the required facts[.]" *Id.* at 34, 856 P.2d at 1224. Rather than setting forth any facts, the words "Refer to police [r]eport" were written on the "Sworn Statement of Arresting Officer" (the Sworn Statement Form) in the instant case. Petitioner argues this notation was inadequate because "[i]t did not identify [the pertinent] police report." It is clear from an examination of the record, however, that the Sworn Statement Form referred to the report by the officer who arrested Petitioner. The words "Refer to police [r]eport" incorporated the relevant police report by reference. An "Incident Report" of Petitioner's arrest follows the Sworn Statement Form in the record and both are signed by the arresting officer. The Sworn Statement Form contains the arrest report number, Petitioner's name and social security number, and the date, time, and location of the arrest. The incident or police report following the Sworn Statement Form reflects the same information and details about the arrest. Therefore, the arresting officer's sworn statement referring to a particular police report was sufficient to establish facts demonstrating reasonable suspicion and probable cause to arrest because there was no ambiguity as to which police report was involved. As a result, the Sworn Statement Form in the instant case was sufficient under HRS § 286–257.

### C.

█ We find Petitioner's second contention that the sworn statement was "content-

---

(3) The sworn statement of the person who conducted the test stating facts which establish that pursuant to section 321–161 and rules adopted thereunder:
(A) The person was trained and at the time the test was conducted was certified and capable of operating the testing equipment;
(B) The person followed the procedures established for conducting the test;

(C) The equipment used to conduct the test functioned in accordance with operating procedures and indicated that the person's blood alcohol concentration was at, or above, the prohibited level; and
(D) The person whose breath or blood was tested was the person arrested[.]

deficient" without merit. HRS § 286–257(a)(1)(A) and (B) require the arresting officer's police report to contain facts establishing that the officer had reasonable suspicion to stop Petitioner and that there was probable cause to believe Petitioner was driving while intoxicated. The Sworn Statement Form permissibly referred to the police report for the necessary facts and was not "content-deficient." In the police report, the arresting officer articulated specific facts regarding Petitioner's erratic driving and physical condition which established reasonable suspicion and probable cause to arrest.[8]

### D.

Petitioner lastly asserts that the sworn statement was content-deficient because "it failed to inform [him] that pursuant to HRS § 286–264 if he refused to take a blood alcohol content test he would not qualify for a conditional permit." Petitioner, however, had agreed to an intoxilyzer test after the arresting officer, pursuant to HRS § 286–257(a)(1), informed him of the sanctions for refusing to take a test. While Petitioner acknowledges that "it is true that [Petitioner] did not refuse a blood or breath test," he nevertheless argues that "he was entitled to have a complete notice and an understanding of all of the sanctions of the law."

Whenever a person is arrested and submits to a test which establishes that the arrestee's blood alcohol concentration is .10 or more, ·HRS § 286–257(a)(1)(C) requires that a copy of the arresting officer's report and a sworn statement establishing that the arrestee was "informed of the sanctions of [HRS chapter 286, Part XIV], [and] that criminal charges may be filed, and [of] the consequences of refusing to be tested" be immediately forwarded to the Director. The officer's Sworn Statement Form does not

indicate that the officer informed Petitioner that under HRS § 286–264(a), "the director may, at the request of the arrestee at the administrative hearing, issue a conditional permit allowing the arrestee to drive" if an arrestee had submitted to a breath or blood test and had no prior alcohol enforcement contacts. HRS § 286–264(a).

 "The ADLRO has a duty to provide clear information regarding both the administrative and criminal proceedings faced by a defendant." *State v. Feldhacker,* 76 Hawai'i 354, 357, 878 P.2d 169, 172 (1994) (citing HRS § 286–254(a)(2)–(3)). However, the failure to notify Petitioner of the Director's discretion to issue a conditional permit to drive to persons who do submit to a test for intoxicating liquor pursuant to HRS § 286–264 was immaterial. Petitioner suffered no prejudice since he chose to take an intoxilyzer test and was in fact issued a conditional permit to drive. To the extent the notice was deficient, Petitioner is not entitled to relief because he did, in fact, submit to a test for intoxication. *Cf. id.*

### V.

 Finally, Petitioner maintains that the Director erred by admitting the sworn statements of the intoxilyzer operator and intoxilyzer supervisor into evidence. He alleges that the intoxilyzer supervisor's reference to a "test" was vague. From our review of the record, however, we find that the word "test" clearly referred to the intoxilyzer test which measures an individual's blood alcohol concentration.

 Petitioner also asserts that the January 12, 1993 "Sworn Statement of Intoxilyzer Supervisor" failed to establish that the intoxilyzer was in good working condition or was

---

8. The four-page police report contained the following observations:

> Just EWA of Lewers St. I observed [Petitioner's] vehicle drift to the right and cross the broken white line that was on the right of his vehicle. . . .
> His vehicle then drifted back to the left completely crossing it's [sic] original lane of travel and almost hit the curb.
> At about Kalaimoku St. [Petitioner] jerked the vehicle back·to the right and again crossed the

> broken white line that was on the right of his vehicle. . . .

> After stopping Petitioner and asking him for his registration papers, the officer noted the following: "While talking to [Petitioner] I could detect a strong odor of an alcoholic beverage coming from his breath, his face appea[ ]red to be flush [sic], his eyes were red[,] bloodshot and glassy." At that point the officer asked Petitioner to perform the field sobriety test.

properly maintained because the statement was signed more than two weeks prior to the date Petitioner was administered the test. It is established that an intoxilyzer machine is presumed to be working properly "thirty days from and after the date [a] supervisor tests it for accuracy." *Park v. Tanaka,* 75 Haw. 271, 278, 859 P.2d 917, 921 (1993). The *Park* court held that pursuant to the Administrative Rules of the State Department of Health, Title 11, chapter 111–2.1(j)(2), there is a

> presumption that the intoxilyzer machine is working properly thirty days from and after the date that the supervisor tests it for accuracy. Thus, although the *date on the sworn statement precedes the date on which an arrestee is tested, as long as the arrestee's test date is within the thirty-day period covered by the sworn statement, the instrument is presumed to be working properly.* Therefore, given a valid sworn statement, the burden is on the arrestee to adduce evidence that the machine was not working properly at the time of the arrestee's test for blood alcohol content.

*Id.* (citation omitted) (emphasis added).

▆▆▆▆ As directed by HRS § 286–257(a)(2), the "Sworn Statement of Intoxilyzer Supervisor" declared that (1) she or he was a "duly certified intoxilizer [sic] supervisor trained to maintain and verify the accuracy" of the intoxilyzer machine; (2) the machine was "an alcohol testing device approved for use in the State of Hawaii [Hawai'i]" pursuant to HRS § 321–161 (1993); and (3) the machine "used had been in proper working order when the test was conducted." The intoxilyzer supervisor's affidavit set forth all of the requirements under HRS § 286–257(a)(2), and therefore, we conclude that the intoxilyzer supervisor's sworn statement satisfied the statutory standard. Petitioner's test was performed on January 27, 1993, a date which conclusively falls within the thirty-day time frame approved in *Park*. Petitioner failed to adduce any evidence that the machine was not working properly. Hence, the intoxilyzer was presumptively in proper working condition at the time of the test.

## VI.

Petitioner appealed the district court's judgment affirming revocation "under the general jurisdiction statutes." *Kernan v. Tanaka,* 75 Haw. 1, 20, 856 P.2d, 1207, 1217 (1993), *cert. denied,* ——— U.S. ———, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). *See* HRS § 641–1(a) (1993). Accordingly, we vacate the district court's May 20, 1993, Decision and Order Affirming Administrative Revocation and its May 20, 1993 Judgment on Appeal and remand the case to the district court with instructions that it vacate the hearing officer's March 16, 1993, Findings of Fact, Conclusions of Law and Decision and remand the matter to the Director for further proceedings consistent with this opinion. *See* HRS § 641–2 (1993).

WATANABE, Judge, concurring and dissenting.

I disagree with the conclusion of the majority, contained in Part I of the opinion, that "[u]nder rudimentary requirements of due process, Petitioner was entitled to the opportunity to rebut the statement of good cause." Majority opinion at 136.

The record in this case indicates that Petitioner never requested the issuance of a subpoena, summoning the person who requested the continuance to appear at the hearing. There is also no indication in the transcripts of the administrative revocation hearing that the person who requested the continuance was available to testify at the hearing.

If Petitioner had intended to challenge the "good cause" basis for the continuance, I believe it was incumbent on Petitioner to have the person who requested the continuance present at the hearing. Since Petitioner failed to do so, I cannot agree that the hearing officer abused her discretion in rejecting Petitioner's challenge to the continuance or that Petitioner's due process rights were violated.

Moreover, it appears from the record that Petitioner's primary motivation for wanting to cross-examine the person who requested the continuance was to explore whether Petitioner's appeal could have been heard on the originally scheduled date by another hearing

officer or at some other date and time earlier than the rescheduled hearing date. I do not believe that such cross-examination into the nitty-gritty details of the operations of the Administrative Driver's License Revocation Office (ADLRO) should be allowed.

When a hearing officer notifies the ADLRO on the morning of a hearing that he or she will be unable to report to work due to sudden illness or a death in the family, quick decisions must be made as to what will happen to the hearing officer's caseload for that day. Parties whose cases are scheduled to be heard by that hearing officer, as well as their attorneys, must be immediately notified if their cases will be continued, and if so, to what date. It is not always feasible for another hearing officer, who has not prepared for the hearing, to step in as a last-minute substitute for the original hearing officer. It is also not always possible or even practical to rearrange hearings scheduled for subsequent days so as to squeeze additional hearings into existing calendars.

Although a petitioner should be able to challenge whether good cause exists for a continuance, I do not believe that a petitioner should be able to second-guess, in hindsight, whether his or her appeal could have been heard at an earlier date and time.

### ORDER DENYING RECONSIDERATION OF OPINION FILED NOVEMBER 30, 1995

Petitioner–Appellant Robert C. Miller (Petitioner) filed a Motion for Reconsideration on December 4, 1995 following our decision in *Miller v. Tanaka*, 80 Hawai'i 358, 910 P.2d 129 (Haw.App.1995). We granted Petitioner's motion for reconsideration on December 5, 1995 and further ordered Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (Respondent) to file an answer to the aforementioned motion for reconsideration. Respondent timely filed its answer on December 18, 1995. We deny Petitioner's request to amend our opinion.

Petitioner argues that Hawai'i District Court Rules of Civil Procedure (DCRCP) Rule 72(i) restricts our disposition of *Miller* to affirmance or reversal because the district court from which the appeal was taken is restricted to affirming or reversing the administrative ruling. Petitioner relies on DCRCP Rule 72(i), which provides in pertinent part, "[u]pon determination of the petition, the [district] court having jurisdiction shall enter judgment to *reverse or affirm* the administrative ruling. Such judgment shall be reviewable, or final, as may be provided by law." (Emphasis added.) DCRCP Rule 72(i) has not been previously construed by an appellate court of our jurisdiction. However, DCRCP Rule 72(i) does provide that the "judgment shall be reviewable, or final, as may be provided by law." Hence, to determine the reviewability of the district court's judgment concerning an "administrative ruling," we examine the statute involved. *Cf. County of Hawai'i, v. Civil Serv. Comm'n*, 77 Hawai'i 396, 885 P.2d 1137 (App.1994).

In *Miller*, the district court affirmed Petitioner's driver's license revocation. Hawai'i Revised Statutes (HRS) chapter 286, Part XIV (1993), which governs the administrative revocation of driver's licenses by the Administrative Driver's License Revocation Office (ADLRO), does not specify whether the district court's judgment is reviewable or final.

The Hawai'i Supreme Court confronted the scope of appellate jurisdiction over appeals under HRS chapter 286, Part XIV ADLRO proceedings as one of the issues in *Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). The question in *Kernan* pertinent here was "whether the lack of a statutory provision providing for a further appeal [beyond the district court] is evidence that the legislature did not authorize an appeal beyond the district court level or whether the omission of statutory authority supports a conclusion that the legislature intended the general statutes governing appeals to be applicable." *Id.* at 15–16, 856 P.2d at 1215 (citations omitted). Noting that HRS § 641–1(a) provides in part that "'[a]ppeals shall be allowed ... from all final judgments, orders, or decrees of circuit and district courts ... except as otherwise provided by law[,]'" the supreme court reasoned that "any district court final judgment,

order, or decree may be appealed to the supreme court, unless a specific statute provides otherwise." *Id.* at 16, 856 P.2d at 1216. The *Kernan* court concluded that "the omission of language specifically providing further appeal to this court does not signal finality at the district court level" because "HRS § 286–260 makes no attempt, by its own terms, to limit the general right of appeal from all final district court judgments as set out in HRS § 641–1(a)." *Id.* at 17, 856 P.2d at 1216. Consequently, under "HRS §§ 602–5(1) and 641–1(a), jurisdiction properly lies in the [appellate] court to hear and determine appeals from district court judgments after an administrative hearing." *Id.*

Thus, in *Miller,* we vacated and remanded the case, noting that petitioner appealed "under the general jurisdiction statutes[,]" and cited *Kernan* and HRS § 641–1(a) (1993). *Miller,* 80 Hawai'i at 369, 910 P.2d at 140.

■ Under the general jurisdiction statutes, appellate courts are empowered, *inter alia,*

> To make or award such judgments, decrees, orders and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it.

HRS § 602–5(7) (1993). Within this power is the power to remand to the district court. *See State v. Arlt,* 9 Haw.App. 263, 277, 833 P.2d 902, 910 (1992) ("[s]ince there is no statute or constitutional provision in Hawai'i which specifically vests in the appellate courts the express authority to affirm, reverse, remand, vacate, or set aside any judgment, decree, or order of a court brought before them, such authority presumably derives from [HRS § 602–5(7) ]."). Accordingly, it is evident that under the general jurisdiction statutes, we have the power to remand the district court's judgment to the district court.

■ With respect to whether the district court may remand the case to the ADLRO, we note that HRS § 286–260 authorizes judicial review of ADLRO proceedings by the "district court in the district in which the offense occurred[.]" HRS § 286–260(a). The statute does not limit the district court's dispositions on judicial review to affirmance or reversal other than the following provision in HRS § 286–260(b), that "the court shall affirm the administrative revocation" if a petitioner fails to appear without just cause.

As Respondent argues, our " 'vacate and remand for further proceedings' instruction [in *Miller,* —— Hawai'i at ——, 910 P.2d at 140] squarely falls within the ... provision of the general statute outlining the district courts' powers" in HRS § 604–7(e) (1993). HRS § 604–7(e), like HRS § 602–5(7), grants the district court such powers as we have held to encompass the power to remand in *Arlt.* HRS § 604–7(e) provides as follows:

> The several district courts shall have the power to make and award judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts ... as may be necessary to carry into full effect the powers which are or shall be given them by law or for the promotion of justice in matters pending before them.

In the absence of a specific provision in HRS chapter 286, Part XIV limiting the manner of the district courts' dispositions, we conclude that there was no legislative intent to limit these dispositions, such as by remand, ordinarily available to the reviewing courts. *Cf. Kernan.* We hold, therefore, that the district court is vested with jurisdiction under HRS § 604–7(e) to remand the case to the ADLRO for proceedings consistent with our opinion.