960 P.2d 157

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Keith HULIHEE, Defendant–Appellant.**

No. 19869.

Intermediate Court of Appeals of Hawai'i.

May 22, 1998.

Jamie Nakano, Deputy Public Defender, on the briefs for defendant-appellant.

Sandra L. Scott, Deputy Prosecuting Attorney, County of Hawai'i, on the brief for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Defendant–Appellant Keith Hulihee (Hulihee) appeals the district court's (1) May 6, 1996 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence and (2) the April 17, 1996 judgment convicting him of No Reconstruction Permit (NRP), Hawai'i Revised Statutes (HRS) § 286–85 (1993), and Driving Under the Influence of Intoxicating Liquor (DUI), HRS § 291–4 (1993).[1] We reverse.

We conclude that when the police requested from Hulihee, who was seated in his parked vehicle, Hulihee's driver's license, vehicle registration card, and vehicle reconstruction permit, (1) they temporarily detained/seized Hulihee, and (2) they did so unlawfully because they did not, at the time of that temporary detention/seizure, have specific articulable facts which, taken together with rational inferences from those facts, created a reasonable suspicion that Hulihee had been or was about to be involved in criminal conduct.

## BACKGROUND

On August 8, 1995, Hulihee filed a Motion to Suppress Evidence (Motion to Suppress) contending that the police officer's stop of Hulihee to verify Hulihee's possession of a vehicle reconstruction permit was an unlawful seizure. After a March 20, 1996 hearing, the district court entered its May 6, 1996 Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. Detective Sergeant Sam Thomas [Detective Thomas] has been employed with the Hawaii [Hawai'i] County Police

---

1. ˙Defendant–Appellant Keith Hulihee (Hulihee) was also charged with fraudulent use of plates, emblems, decals and no no-fault insurance, but those charges were dismissed by the prosecution.

Department's Vice Section for the past five years and nine months;

2. [Detective Thomas] is very familiar with the Keawe Street area as it pertains to drug distribution;

3. [Detective Thomas] rendered an opinion that the Keawe Street area is an area where a high incidence of drug distribution and use occurs;

4. [Detective Thomas'] opinion is based on his work in the area, the drug related case reportings, and the reports from the local merchants in the area who have complained that the area in question is infested with drug users and sellers alike;

5. Officer Alexander Graves [Officer Graves] has been a police officer with the Hawaii [Hawai'i] County Police Department for a little over five and one half years;

6. That on April 5, 1995, [Officer Graves] was assigned to the South Hilo District;

7. That the South Hilo District includes the area in and around Keawe Street;

8. On April 5, 1995, at approximately 11:30 p.m., while on duty, [Officer Graves] made a pass through the area in question and noticed a Suzuki vehicle, the vehicle in which the Defendant, [Hulihee] ... was observed to be located in[,] parked along Keawe Street;

9. [Officer Graves] testified that during this first pass through he noticed that the Suzuki vehicle was clearly modified with a lift kit, in the form of higher suspension and wide tires and rims;

10. [Officer Graves] further testified that he observed two males in the vehicle and made a mental note of the vehicle being illegal for reconstruction purposes;

11. [Officer Graves] continued his patrol returning to the area about ten to fifteen minutes later and observed the same vehicle in the same area with two males still in the vehicle;

12. [Officer Graves] pulled up behind the vehicle and informed dispatch of his location and the pertinent information with regard to the vehicle;

13. [Officer Graves] approached the vehicle and driver;

14. [Officer Graves] testified that his purpose for approaching the vehicle was to provide a police presence to deter criminal activity in a known drug trade area, to identify the driver, do a field interview on the driver to find out why he was in the area at this time at night, what business he had to be there, and to ascertain if he had a reconstruction permit for the vehicle;

15. [Officer Graves] testified on cross examination that he would not have approached the vehicle had this occurred in the middle of the day but based his approach on the vehicle on what he observed that being two males sitting in a car in a drug trade area, a high crime area, at a normal time for drug trafficking, that being during the 11:00 p.m. hour;

16. [Officer Graves] further testified that in the County of Hawaii [Hawai'i] vehicles are not given decals to place on vehicles which are given reconstruction permits;

17. [Officer Graves] testified that he approached the vehicle in question and obtained identification from [Hulihee] and questioned him about the reconstruction permit;

18. It was during this approach and request for identification and car documents that [Officer Graves] detected an odor of alcohol;

19. This detection of an odor of alcohol was detected very quickly;·

20. It was after the detection of an odor of alcohol that [Hulihee] was asked to exit the vehicle;

21. It was after [Hulihee] exited his vehicle and was already out and on the sidewalk that he was asked if he would take a field sobriety test;

22. [Officer Graves] explained to [Hulihee] his options to take the test, not take the test, or refuse the field sobriety test;

23. [Hulihee] took the field sobriety test and in [Officer Graves'] opinion failed;

24. [Hulihee] was arrested after he failed the field sobriety test; and

25. The State's witnesses were found to be credible witnesses.

## CONCLUSIONS OF LAW

1. That the issue in this case is whether Officer Graves['] initial approach of [Hulihee] was permissible.

2. That as a matter of law, this was not a Terry vs. Ohio type stop.

3. That as a matter of [l]aw, this Court applies the body of case law dealing with officers approaching pedestrians rather than the stopping of motor vehicle, to the facts of the instant case.

4. That this Court did review State vs. Kearns, a case dealing with an officer approaching a pedestrian, and found the facts in the instant case to be separate, distinct and distinguishable from the Kearns facts.

5. That as a matter of law, Officer Grave's [sic] initial approach of the Defendant was permissible.

Detective Thomas and Officer Graves were the only witnesses to testify at the hearing on Hulihee's Motion to Suppress. Officer Graves testified on cross-examination in relevant part as follows:

Q. On the first time you observed the car, you didn't see the face of the individual sitting in the car, correct?

A. Correct.

Q. So you're not really sure whether those same individuals were the ones that you initially saw when you came back?

A. No, I'm not.

Q. Now, you said you observed defendant's vehicle to be on Keawe Street, right?

A. Correct.

Q. And you never observed defendant to be driving this vehicle correct?

A. That's correct.

Q. When you approached the vehicle, the engine was not running, correct?

A. That's correct.

Q. And the defendant's vehicle was parked, correct?

A. Was parked legally, yes.

Q. Now, this area in which defendant's vehicle was parked is in downtown Hilo, correct? That's downtown Hilo area?

A. Correct.

\* \* \*

Q. Now, officer, after you approached the defendant, you talked to him, correct?

A. Yes.

Q. Okay. And you asked for his driver's license?

A. That's correct.

Q. And then you asked for the registration card and also for the reconstruction permit, correct?

A. Yes.

Q. You detected the odor of alcohol, correct?

A. Yes.

Q. Ordered him out of the car?

A. No.

Q. Did you ask him to exit?

A. Correct.

In her affidavit in support of the State's opposition to Hulihee's Motion to Suppress, the deputy prosecuting attorney noted that, when Officer Graves initially made contact with Hulihee, the latter "was sitting behind the wheel of his vehicle on a public roadway with the keys in the ignition."

On April 17, 1996, Hulihee entered a conditional plea and was sentenced.[2] The sentence was stayed pending this appeal.

## POINTS ON APPEAL

Hulihee contends that the court erred in denying his Motion to Suppress because: (1) "OFFICER GRAVES' INITIAL APPROACH AND QUESTIONING OF MR. HULIHEE CONSTITUTED AN ILLEGAL SEIZURE" and Conclusions of Law (COL) Nos. 1, 2, 4, and 5 are wrong; (2) "THE SEIZURE WAS UNCONSTITUTIONAL

2. For the Driving Under the Influence (DUI) charge, Hulihee was sentenced to a three-month license suspension, counseling, a $150.00 fine and a $5.00 contribution to the Drivers Education Training Fund. For the No Reconstruction Permit charge, he was fined $50.00 and assessed $5.00 to the Drivers Education Training Fund.

BECAUSE IT WAS BASED ON PRE-TEXT[,]" FOF No. 15 is clearly erroneous, and COL No. 5 is wrong; and (3) "OFFI-CER GRAVES' ORDERING MR. HULI-HEE OUT OF THE VEHICLE WAS IL-LEGAL" "because Officer Graves did not have a reasonable basis to believe that Mr. Hulihee had been driving under the influence of alcohol" and COL No. 3 is wrong.

## DISCUSSION

We conclude that COL No. 1 is wrong and COL No. 5 is right. Officer Graves was performing his duty when he initially approached Hulihee. *State v. Tsukiyama,* 56 Haw. 8, 14, 525 P.2d 1099, 1103 (1974).

COL No. 2 is right. There was no "stop."

COL No. 3 is wrong. This was a *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), type detention/seizure.

COL No. 4 is right that the facts in *State v. Kearns,* 75 Haw. 558, 867 P.2d 903 (1994), differ from the facts in this case. However, COL No. 4 is wrong that the precedent of *Kearns* is not relevant.

In *Kearns,* the Hawai'i Supreme Court concluded that "a person is seized if, given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave. Whether a reasonable person would feel free to leave is determined under an objective standard that this court reviews *de novo.*" *Id.* at 566, 867 P.2d at 907 (citations omitted; emphasis in original).

In *Kearns,* the Hawai'i Supreme Court further concluded that "a person is seized, for purposes of article I, section 7 of the Hawai'i Constitution, when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information." *Id.* at 567, 867 P.2d at 907.

It appears that the first *Kearns* quote states the basic burden of proof and the second *Kearns* quote states one of the ways the basic burden of proof can be satisfied. That appears to have been the Hawai'i Supreme Court's understanding when, in *State*

*v. Trainor,* 83 Hawai'i 250, 256, 925 P.2d 818, 824 (1996), it stated that the second quote "further clarified" the first quote.

Although the burden imposed by the second *Kearns* quote is formulated in terms of the police officer's express or implied purpose, the question whether the burden imposed by the first *Kearns* quote has been satisfied is determined under an objective standard from the point of view of a reasonable person in the shoes of the person being approached by the police officer. As stated in the *Kearns* opinion:

> Under these circumstances, the following statements from Justice Brennan's concurring opinion in *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), clearly apply to the encounter.
>
>> For plainly [the defendant] was "seized" ... when the officers asked him to produce his driver's license and airline ticket.... By identifying themselves and asking for [the defendant's] airline ticket and driver's license the officers, as a practical matter, engaged in a "show of authority" and "restrained [the defendant's] liberty." It is simply wrong to suggest that a traveler feels free to walk away when he has been approached by individuals who have identified themselves as police officers and asked for, and received, his airline ticket and driver's license.
>
> 460 U.S. at 511–12 (citations omitted).

*Id.* at 568, 867 P.2d at 908.

■ In this case, (a) Hulihee was seated in the driver's seat, the key was in the ignition, and the engine was not running; (b) before Officer Graves detected the odor of alcohol, Officer Graves asked Hulihee for his driver's license, the vehicle registration card, and the vehicle reconstruction permit; and (c) when (b) occurred, Hulihee was detained/seized by Officer Graves. Thus, the facts show that Officer Graves detained/seized Hulihee before Officer Graves detected the odor of alcohol and then reasonably suspected that Hulihee had committed a DUI violation.

The conclusion that a warrantless seizure occurred does not end the analysis. We have recognized a few exceptions to the warrant requirement of article I, sec-

tion 7 of the Hawai'i Constitution in the context of seizures: ... the police may temporarily detain an individual if they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot[.]

*Id.,* at 568–69, 867 P.2d at 908 (citations omitted). In other words, the police may temporarily detain/seize an individual "for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest[,]" *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), when the police are "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868.

■ The State argues that Officer Graves had a reasonable suspicion that Hulihee's vehicle had been reconstructed without a valid permit, and this reasonable suspicion justified the detention/seizure of Hulihee. We conclude that Officer Graves' suspicion was not reasonable.

HRS § 286–85(a) (1993) states that "[n]o person shall operate a reconstructed vehicle upon a public highway unless it has been inspected and certified[.]" Unlike the DUI statute, HRS § 291–4(a) (1993), which applies when "[t]he person operates or assumes actual physical control of the operation of any vehicle[,]"[3] the NRP statute, HRS § 286–85(a), applies only when the person "operate[s] a reconstructed vehicle upon a public highway[.]"

Hulihee was observed seated in the driver's seat of his vehicle, and his vehicle was parked on a public street with the key in the ignition and the engine not running. Officer Graves suspected that Hulihee was guilty of NRP. For two reasons, however, Officer Graves did not have a reasonable suspicion based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the detention/seizure. First, he had no evidence or information of Hulihee's operation of the vehicle. Second, as noted in FOF No. 16, the County of Hawai'i does not require the posting of anything on a vehicle to show that it is covered by a reconstruction permit, and Officer Graves had no evidence or information that Hulihee's motor vehicle was not covered by a valid reconstruction permit.

We conclude that the evidence of the NRP and the DUI was illegally obtained as a result of the unconstitutional detention/seizure. Therefore, that evidence must be suppressed.

## CONCLUSION

Accordingly, we reverse the district court's (1) May 6, 1996 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence and (2) the April 17, 1996 judgment convicting Defendant–Appellant Keith Hulihee of No Reconstruction Permit, HRS § 286–85, and Driving Under the Influence of Intoxicating Liquor, HRS § 291–4.

---

**3.** In *State v. Cannon,* 56 Haw. 161, 532 P.2d 391 (1975), the Hawai'i Supreme Court held that a person could be convicted of DUI when he was found sleeping, seated in the driver's seat of his truck but leaning to the right side, and his truck was resting on a low stone fence along a public street, with the ignition on. *Id.* at 162, 532 P.2d at 393.

    In *Wofford v. State,* 739 P.2d 543 (Okla.Crim. App.1987), the court held that:

    [w]e believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away. He therefore had "actual physical control" of the vehicle within the meaning of the statute.

*Id.* at 544 (citation omitted); *see also Adams v. State,* 697 P.2d 622, 625 (Wyo.1985); *State v. Holloran,* 140 N.H. 563, 669 A.2d 800 (1995) (holding that evidence was sufficient to support conviction for DUI where truck legally parked, lights off, defendant in driver's seat and defendant exhibited signs of drunkenness); *State Ex Rel. McDougall v. Superior Court,* 173 Ariz. 582, 845 P.2d 508, 511 (App.1992) (stating that the element of actual physical control is shown where the defendant has the apparent ability to start and move the vehicle).