9 P.3d 513

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Nathan AH LOO, Defendant–Appellee.**

No. 22467.

Intermediate Court of Appeals of Hawai'i.

July 5, 2000.

Certiorari Granted Aug. 2, 2000.

Bryant Zane, Deputy Prosecuting Attorney, County of Kauaʻi, on the briefs, for Plaintiff-Appellant.

Rose Anne Fletcher, Deputy Public Defender, City and County of Honolulu, on the briefs, for Defendant-Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Pursuant to Hawaiʻi Revised Statutes (HRS) § 641–13(7) (1993) [1], Plaintiff-Appellant State of Hawaiʻi (the State) appeals the April 14, 1999 Findings of Fact, Conclusions of Law and Order (FsOF, CsOL, and Order) entered by the District Court of the Fifth Circuit, granting the February 5, 1999 Motion to Suppress (M/S) filed by Defendant-Appellee Nathan Ah Loo (Ah Loo or the defendant). We affirm.

The M/S sought to suppress Ah Loo's answers to questions asked by Police Detective Sherwin K. Perez (Detective Perez) before Detective Perez cited Ah Loo for committing the offense of Prohibitions Involving Minors, HRS § 281–101.5 (1993),[2] a petty misdemeanor. HRS § 281–101.5(d).

## BACKGROUND

■ The FsOF, CsOL, and Order state in relevant part as follows:

1. Hawaiʻi Revised Statutes (HRS) § 641–13 (1993) states in relevant part as follows:

   **By State in criminal cases.** An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602 [Courts of Appeal], in all criminal cases, in the following instances:

   . . . .

   (7) From a pretrial order granting a motion for the suppression of evidence, . . . in which case the intermediate appellate court or the

*FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER*

[Ah Loo's] motion to suppress having regularly come on for hearing on March 12, 1999, . . . , this Court makes the following findings of fact and conclusions of law and issues the following order:

*Findings of Fact*

1. On February 6, 1999 [Ah Loo] was with [a] small group of teenagers behind the Wailua Golf Course, a public place.

2. [Ah Loo] was holding a beer can in his hand.

3. Several plain clothes police officers, who had been assigned to a special project, went to that area to investigate juveniles drinking alcohol in public places.

4. Upon their arrival about 11:50 p.m. one of the officers saw [Ah Loo] and he appeared to be under 21 years of age.

5. The officers blocked the group's vehicles from leaving.

■ An officer approached [Ah Loo] and, without Mirandizing him, asked [Ah Loo] his age.

■ [Ah Loo], believing that he was not free to leave and was obliged to answer, said that he was 18 years old.

■ The officer then demanded identification.

■ [Ah Loo] replied that he did not have any.

■ The officer, without Mirandizing [Ah Loo], asked [Ah Loo's] name, age and address.

■ [Ah Loo] was not free to leave and [the officer] would not have cited him

supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

2. HRS § 281–1 (1993) defines "minor" as "any person below the age of twenty-one years." HRS § 281–101.5(b) (1993) states in relevant part that "no minor shall have liquor in the minor's possession or custody . . . in any public place[.]"

if he refused to provide information as to his age.[3]

■ [Ah Loo] felt compelled to answer the officer's questions.

■ [Ah Loo] moved to suppress his answers to the officer's questions and all information derived pursuant to that encounter.

### Conclusions of Law

1. [Ah Loo] was "detained" by the police.

2. The officer, having seen [Ah Loo] holding a beer bottle and appearing to be under age, had probable cause to detain [Ah Loo] and question him.

3. Since [Ah Loo's] age is an element of the offense of Prohibition to ask his age is to ask for incriminating information.

4. Before questioning [Ah Loo], the officer should have Mirandized [Ah Loo]....

5. [Ah Loo] was subjected to the will of the officer and felt compelled to answer his questions.

. . . .

### Order

IT IS HEREBY ORDERED that [Ah Loo's] motion to suppress is granted and that [Ah Loo's] statements to the officer and all information derived by reason of their encounter is suppressed.

(Footnote added.)

### DISCUSSION

The State does not challenge any of the FsOF. It challenges CsOL nos. 2, 4, and 5.

■ It is the law that "[a] person must be advised of the person's *Miranda [v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),] rights before the person is subjected to 'custodial interrogation.'" *State v. Blackshire,* 10 Haw.App. 123, 131–32, 861 P.2d 736, 741 (1993) (citations omitted). In other words, before custodial interrogation may begin, the person must be advised that the person has the right to remain silent, that anything the person says could be used against the person, that the person has the right to the presence of an attorney, and that if the person cannot afford counsel, one will be appointed for the person. *State v. Nelson,* 69 Haw. 461, 466, 748 P.2d 365, 368 (1987).

■ "Custodial interrogation involves two requirements: (1) interrogation and (2) custody. These two requirements sometimes overlap." *Blackshire,* 10 Haw.App. at 132, 861 P.2d at 741. "[A] person who has been 'seized' is in 'custody.'" *Id.* at 135, 861 P.2d at 742.

In [*State v. ]Kearns,* [75 Haw. 558, 867 P.2d 903 (1994),] the Hawai'i Supreme Court concluded that "a person is seized if, given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave. Whether a reasonable person would feel free to leave is determined under an objective standard that this court reviews *de novo.*" *Id.* at 566, 867 P.2d at 907 (citations omitted; emphasis in original).

*State v. Hulihee,* 87 Hawai'i 487, 490, 960 P.2d 157, 160 (App.1998).

■ Ah Loo was not free to leave. Therefore, he was the subject of an investigative stop.

■ The *Miranda* rule does not preclude the police, in the exercise of their investigatory duties or functions, from making general on-the-scene inquiries as to facts surrounding a crime or other general questions in the fact-finding process. In *State v. Patterson,* [59 Haw. 357, 361–62, 581 P.2d 752, 755 (1978) ], we approved of the California Supreme Court's delineation in *People v. Manis,* 268 Cal.App.2d 653, 74 Cal.Rptr. 423 (1969) of

**3.** The detective was not asked whether he would have "cited" the defendant if he refused to provide information as to his age. When asked, "And would you have arrested the defendant if you weren't able to obtain his age?" the detective responded, "No, not at all." It is the law "that an 'arrest' may involve either (1) taking the alleged violator into extended physical custody or (2) issuing the individual a citation." *State v. Vallesteros,* 84 Hawai'i 295, 301, 933 P.2d 632, 638 (1997). Query whether both the question and the answer used the word "arrest" as a synonym for the word "cited."

**204**

the outer parameters beyond which on-the-scene interviews may not proceed without *Miranda* warnings. In *Manis* the court stated:

> [P]ersons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive.

*State v. Melemai*, 64 Haw. 479, 481–82, 643 P.2d 541, 544 (1982) (citation omitted).

> [D]uring an investigative stop or after an arrest, requests for items of information within the "routine booking question exception" are not, in most cases, interrogation. These items of information are: name, address, height, weight, eye color, date of birth, current age and, logically, social security number.
>
> However, conversation and general on-the-scene questioning ends, interrogation begins, and the routine booking question exception does not apply: (1) when the police request information designed to elicit an incriminatory admission; or (2) where the police should have known that their communication was reasonably likely to elicit an incriminating response.

*Blackshire*, 10 Haw.App. at 134, 861 P.2d at 742 (citations omitted).

■ The State argues:

The questioning of [Ah Loo] by Detective Perez was not custodial interrogation and therefore [Ah Loo's] *Miranda* rights were not triggered. Regardless of whether the questioning was custodial interrogation or not, *Miranda* warnings were not required before the questioning of [Ah Loo] by Detective Perez, because the questioning was merely general, on-the-scene fact gathering which also falls within the "routine booking question exception."

. . . .

. . . In this case, [Ah Loo] was not in custody. He was briefly asked three questions. Nowhere in the record is there a suggestion that [Ah Loo] was subjected to the will of Detective Perez. There was no probable cause to arrest [Ah Loo] at this point in the investigation. Furthermore, the inquiry into age should not be considered "interrogation" for the purposes of determining whether [Ah Loo] was subjected to custodial interrogation. The inquiry was mere general, on-the-scene fact gathering to which the "routine booking question exception" should be applied. . . .

. . . The evidence of [Ah Loo] holding a beer can and appearing to be under the legal age to consume liquor established a reasonable suspicion that [Ah Loo] was in violation of § 281–101.5. The reasonable suspicion that existed enabled Detective Perez to briefly detain [Ah Loo] and investigate further.

In other words, the State argues that (a) there was no custodial interrogation because there was no custody, (b) there was no custodial interrogation because the questioning was merely general, on-the-scene fact gathering, or (c) even if there was custodial interrogation, the routine booking question exception applied. We disagree with (a), (b), and (c).

This is not a situation where the police arrived at the scene of an alleged or apparent crime and commenced their preliminary inquiry. Ah Loo was subjected to an investigative stop while the police investigated his suspected violation of HRS § 281–101.5.

The dispositive question is whether, when the police asked Ah Loo his age, the police knew or should have known that their question was reasonably likely to elicit an incriminating response. The answer is yes. When the police asked the question, the police knew or should have known that Ah Loo's age was a material element of the offense being investigated.

## CONCLUSION

Accordingly, we affirm the district court's April 14, 1999 Findings of Fact, Conclusions of Law and Order.