3 P.3d 503

**Noel Jay ROBISON, Petitioner–Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, STATE OF HAWAI'I, Respondent–Appellee.**

**No. 22175.**

Intermediate Court of Appeals of Hawai'i.

April 19, 2000.

As Amended on Grant of Partial Reconsideration May 8, 2000.

Timothy I. MacMaster, on the briefs, for petitioner-appellant.

Renee Van Keulen, Deputy Attorney General, on the briefs, for respondent-appellee.

WATANABE, ACOBA, and LIM, JJ.

Opinion of the Court by WATANABE, J.

Petitioner–Appellant Noel Jay Robison (Robison) appeals from: (1) the "Decision and Order Affirming [the] Administrative Revocation" of his driver's license by Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (the Director), entered by the District Court of the First Circuit (the district court) on November 17, 1998 (Decision); and (2) the "Judgment on Appeal," also entered by the district court on November 17, 1998 (Judgment).

Robison argues that: (1) the Director, acting through a hearing officer of the Administrative Driver's License Revocation Office (ADLRO), abused his discretion when he affirmed Robison's license revocation without determining that there existed reasonable suspicion for the officer who arrested him, Officer Brian Branco (Officer Branco), to stop Robison's motor vehicle; (2) Officer Branco did not have knowledge of specific and articulable facts sufficient to warrant the seizure of Robison's person; and (3) the Director abused his discretion by failing to provide Robison with an expeditious hearing.

We agree with Robison's third contention. Accordingly, we vacate the district court's Decision and Judgment and remand this case to the district court, with instructions that it reverse the Director's September 8, 1998 "Findings of Fact, Conclusions of Law, and Decision" that sustained the administrative revocation of Robison's driver's license (the Director's Decision).

## BACKGROUND

On June 19, 1998, at 1:55 a.m., Officer Branco responded to a Honolulu Police Department (HPD) dispatch call that a "hazardous driver" in "a 1976 red MG bearing [Hawai'i] license [plate No.] GVF 410" was leaving the parking lot of the Pearl Kai Shopping Center, located at 98–199 Kamehameha Highway. Officer Branco, heading west-bound on Kamehameha Highway, ob-

served a male driving a "red two MG[1] traveling in the east[-]bound direction of Pearl Kai Shopping Center." Officer Branco quickly made a U-turn, followed the MG into the parking lot of the shopping center, and observed the MG pull into a parking stall fronting the Texaco Pearl Kai service station. Officer Branco then watched as the driver got out of the MG, walked into the Texaco store, and proceeded to an automated teller machine (ATM) in the store. When the driver, subsequently identified as Robison, exited the store, he was approached by Officer Branco, who identified himself as an HPD officer investigating the report of a hazardous driver. At this point, Robison responded, "OK you got me, know what."

While talking to Robison, Officer Branco smelled a strong odor of alcoholic beverage on Robison's breath and noted that Robison had red, watery eyes. Based on these observations, Officer Branco asked Robison to perform field sobriety tests, which Robison failed. Robison was then placed under arrest for Driving Under the Influence of Intoxicating Liquor and taken to the police station.

At the police station, after being informed of the sanctions of the Administrative Driver's License Revocation law, Robison consented to taking a breath alcohol intoxication test, which showed his blood alcohol content to be 0.149.[2] As a result, Robison was notified that his driver's license would be revoked, effective thirty (30) days from the date of his arrest. Robison also was required to surrender his driver's license but was given a temporary permit to drive for thirty (30) days.

Robison subsequently requested an administrative evidentiary hearing to challenge the revocation of his driver's license, and the ADLRO scheduled his hearing for 9:30 a.m. on July 14, 1998.[3] On July 6, 1998, Robison requested that subpoenas for the July 14, 1998 hearing be issued to Officer Branco, as well as to the intoxilyzer operator and the intoxilyzer supervisor. Robison also requested that a subpoena duces tecum be issued to the HPD Custodian of Records (the HPD Custodian) to produce a copy of the tape recording of the communication between Officer Branco and the police dispatcher that ultimately led to Robison's arrest (the dispatch tape), but this request was denied. The issued subpoenas were properly served on Officer Branco and the intoxilyzer operator, but there is no evidence that the intoxilyzer supervisor was served.

At the July 14, 1998 hearing, the ADLRO hearing officer, after receiving testimony from the intoxilyzer operator and Robison, continued the hearing to August 4, 1998, at 10:30 a.m. and extended Robison's temporary driver's permit until that date, finding that good cause existed for the continuance because Officer Branco had called at 8:10 a.m. to report that he was ill and unable to appear for the hearing.

On July 16, 1998, Robison requested that subpoenas for the August 4, 1998 hearing be issued to Officer Branco and the intoxilyzer supervisor and that a subpoena duces tecum be issued to the HPD Custodian for the dispatch tape. All subpoenas were issued, but only Officer Branco was properly served.

Prior to the August 4, 1998 hearing, the ADLRO hearing officer received a written telephone message that Officer Branco had

---

1. Based on the record, it appears that a "red two MG" is a red, two-door MG.

2. Hawai'i Revised Statutes (HRS) § 291–4(a) (Supp.1998) provides, in pertinent part:
 **Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 . . .
 (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters

of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

3. According to the September 8, 1998 Findings of Fact, Conclusions of Law, and Decision, issued by Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (the Director) through a hearing officer for the Administrative Driver's License Revocation Office, the hearing was scheduled for 10:30 a.m. on July 14, 1998. However, other documents in the record on appeal indicate that the hearing was scheduled for 9:30 a.m.

called at 9:15 a.m. to report that he was ill and unable to appear. The hearing officer thereupon continued the hearing to Monday, August 17, 1998, at 10:30 a.m., noting that "[Officer Branco] is ill. [Intoxilyzer supervisor] unserved[,]" and extended Robison's temporary driver's license to August 17, 1998.

On August 5, 1998, Robison requested that subpoenas for the August 17, 1998 hearing be issued to Officer Branco, the intoxilyzer supervisor, and Kyung Kim [ (Kim) ], a civilian witness who, Robison contended, observed "Robison's appearance and conduct at the scene of the arrest." The Director denied the subpoena for Kim on grounds that Kim "did not witness [Robison's] driving or the arrest process." The other subpoenas were issued, but again, only Officer Branco was properly served.

On August 17, 1998, the Director received another telephone message, timed at 8:15 a.m., reflecting that Officer Branco was "[u]nable to appear 8/17–8:15 a.m. He is ill." In granting a continuance of the hearing to September 1, 1998, at 9:30 a.m. and extending Robison's temporary driving permit to September 1, 1998, the hearing officer noted, "[Officer Branco] (for the third time) is ill (served)[. Intoxilyzer supervisor] unserved. Arrestee to serve [Officer Branco], [intoxilyzer supervisor], and [Kim]." [4]

On August 25, 1998, subpoenas for Officer Branco and the intoxilyzer supervisor were issued, commanding them to appear at the September 1, 1998 hearing. Officer Branco was duly served at 3:02 p.m. on August 27, 1998, at the Pearl City Police Station. Although the record does not reflect that the intoxilyzer supervisor was served, he appeared at the September 1, 1998 hearing, and Robison waived his testimony. Officer Branco again did not appear. The hearing officer received a telephone message, timed at 9:00 a.m., stating, "Will be in Ewa ['Ewa] District Court and unable to attend either of the two scheduled ADLRO hearings for today." The hearing officer offered to continue the hearing a fourth time, but Robison objected and requested a reversal of the administrative revocation of his driver's license.

However, the hearing officer proceeded to receive relevant documents into evidence, noting that Robison's counsel had read and reviewed the case file before the start of the hearing. Thereafter, on September 8, 1998, after considering all the testimony and evidence received, the hearing officer, for the Director, issued "Findings of Fact, Conclusions of Law, and Decision," sustaining the revocation of Robison's driver's license.

On September 28, 1998, Robison filed a petition in the district court for judicial review of the Director's Decision.

## DISCUSSION

### A. *Robison Was Not Stopped.*

Hawai'i Revised Statutes (HRS) § 286–259 (Supp.1999) provides, in relevant part, as follows:

> (e) The [D]irector shall affirm the administrative revocation only if the [D]irector determines that:
>
> (1) There existed reasonable suspicion to stop the motor vehicle . . . ;
>
> (2) There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and
>
> (3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .08 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

■ Robison alleges that the Director violated the foregoing statute by affirming the revocation of Robison's driver's license without determining that reasonable suspicion existed to stop Robison's motor vehicle. We disagree.

---

4. The Director noted that he granted the subpoena for civilian witness Kyung Kim "in the interest of administrative economy[,]" but that counsel did not request the issuance of said subpoena.

The record is undisputed that Officer Branco never stopped Robison's vehicle. *See State v. Hulihee,* 87 Hawai'i 487, 489–90, 960 P.2d 157, 159–60 (App.1998). Instead, Officer Branco approached and talked to Robison only after Robison had first parked and exited his vehicle, gone into a service station store to conduct some business at an ATM, and thereafter exited the store. Therefore, HRS § 286–259(e) is not applicable.

### B. *There Were Specific and Articulable Facts to Warrant Robison's Seizure.*

 Robison was clearly "seized" in a constitutional sense when Officer Branco approached him for the express purpose of investigating a report of a hazardous driver. *See State v. Kearns,* 75 Haw. 558, 567, 867 P.2d 903, 907 (1994) (holding that "a person is seized, for purposes of article I, section 7 of the Hawai'i Constitution, when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information"). A warrantless seizure of an individual may be justified, however, if: (1) the police "have probable cause to believe that the individual is committing or has committed an offense"; (2) the police "have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot"; or (3) the individual consents. *Id.* at 568–69, 867 P.2d at 908.

 In this case, our examination of the record reveals substantial evidence to support the hearing officer's conclusion that

> there existed reasonable suspicion, the report of hazardous driving and the match-up of the area of the driving and the make, model, color, and license number of the vehicle being allegedly hazardously driven, for the arresting officer to approach and talk with [Robison] as [Robison] was walking toward [Robison's] vehicle.

We conclude, therefore, that Officer Branco's temporary seizure of Robison in order to investigate reports that Robison was driving hazardously was justified.

### C. *The Director Abused His Discretion by Failing to Provide Robison With an Expeditious Hearing.*

#### 1.

HRS § 286–259 provides, in relevant part, as follows:

> **Administrative hearing.** (a) If the [D]irector administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision within six days of the date the administrative review decision is mailed. The hearing shall be scheduled to commence no later than twenty-five days from the date the notice of administrative revocation was issued. The [D]irector may continue the hearing only as provided in subsection (j).
>
> . . . .
>
> (j) *For good cause shown,* the [D]irector may grant a continuance either of the commencement of the hearing or of a hearing that has already commenced. *If a continuance is granted at the request of the [D]irector, the [D]irector, shall extend the validity of the temporary permit for a period not to exceed the period of the continuance.* If a continuance is granted at the request of the arrestee, the [D]irector shall not extend the validity of the temporary permit. For purposes of this section a continuance means a delay in the commencement of the hearing or an interruption of a hearing that has commenced other than for recesses during the day or at the end of the day or week.

(Emphases added.)

 In *Aspinwall v. Tanaka,* 9 Haw.App. 396, 401–05, 843 P.2d 145, 147–49 (1992), *cert. denied,* 74 Haw. 651, 845 P.2d 1193 (1993), this court held that the foregoing statute mandates that absent a continuance "for good cause shown," an administrative hearing to review the revocation of a driver's license must be commenced "within twenty-five days from the date the notice of administrative revocation was issued." A failure to commence the hearing within the statutory period voids the revocation of the driver's license. *Id.* at 402, 405, 843 P.2d at 148, 149. We also concluded that the continuance of an administrative revocation hearing is invalid if "good cause" is not shown for the continu-

ance. *Id.* at 402, 843 P.2d at 148. In so holding, we relied on the legislative history of HRS § 286–259, which clearly indicated the legislature's desire for the administrative revocation

> process to be expeditious, not to allow the continuance to be used to let cases drag on, to administer this law properly and quickly, *to cause the use of a continuance beyond 30 days to be the unique exception,* and *not to tolerate any lengthy delays in the hearing process* [.] [5]

*Id.* at 404, 843 P.2d. at 149 (emphases and footnote added; brackets and quotation marks deleted).

Subsequently, in *Miller v. Tanaka,* 80 Hawai'i 358, 363–64, 910 P.2d 129, 134–35 (App. 1995), *cert. denied,* 80 Hawai'i 357, 910 P.2d 128 (1996), this court explained that

> [t]he term "good cause" has been defined to mean "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *Black's Law Dictionary* 692 (6th ed.1990). "Good cause" also "depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed."

5. In arriving at this conclusion, we reviewed the legislative proceedings at the time of the initial enactment of Hawai'i's Administrative Revocation of Driver's License law and quoted Senator Lehua Fernandes Salling, Chairperson of the Senate Transportation Committee, who spoke in favor of Senate Bill No. 1148, C.D. 1, which was enacted as 1990 Hawai'i Session Laws Act 188, at 399–413, in relevant part, as follows:

> The bill before us accomplishes three major objectives of the Senate. No. 1, it provides an administrative review and hearing to be completed within 30 days so that the *process is expeditious.* This 30-day limit is followed in most states. No. 2, it requires that a person may have a temporary permit until a hearing has determined his [or her] guilt or innocence. If the state requires more time and asks for *a continuance,* the temporary permit will also continue. We believe that this *will be the exception* and most cases will be decided within the 30 days. And No. 3, should the state lose on the merits of the case, it will be prevented from bringing the driver to criminal proceedings.
>
> * * *
>
> In closing, let me at least mention *one concern* that I have about the bill *which allows the state to have a continuance if they are not able*

This definition comports with Hawai'i cases interpreting the term "good cause."

> *As a general rule, "good cause" means a substantial reason; one that affords a legal excuse.* There is no fixed rule for determining good cause for delay of trial which does not violate accused's constitutional and statutory rights, the matter being one for judicial determination, and the question of what constitutes good cause for a delay in bringing accused to trial is primarily for the discretion of the trial court.

(Emphasis in original; brackets and citation deleted.)

2.

■ Robison contends that the Director, acting through an ADLRO hearing officer, abused his discretion when he continued the administrative hearing three separate times based solely on telephone messages that Officer Branco was "ill." We agree.

The record reflects that Officer Branco was at work at the Pearl City Police Station during the afternoon or evening hours each time he was served with one of the subpoe-

> *to go forward with their case in 30 days.* The Senate's position was to complete the hearing process in 30 days so that the revocation process was "expeditious." The *law enforcement community wanted to be able to have the continuance to make certain that they could adequately prosecute anyone.* And to balance this, we have allowed for the temporary permit to run until the hearing is finally held.
>
> What concerns me is that the *continuance will be used to let cases drag on.* . . .
>
> Mr. President, once this bill is law nothing would fuel the emotional outrage of this community more than the failure to administer this law properly and quickly. As I said before, the use of *a continuance beyond 30 days is the unique exception,* and let the law enforcement community know that we will be watching this.
>
> We have provided in this bill an appropriation for a study that will monitor various aspects of the administration of this law, including the use of the continuance. And *this study is our way of signaling our prosecutors that we will not tolerate any lengthy delays in the hearing process.*
>
> 1990 Senate Journal, at 681–82.

*Aspinwall v. Tanaka,* 9 Haw.App. 396, 403–04, 843 P.2d 145, 149 (1992) (emphases added; brackets deleted).

nas in this case. Although it may not have been an abuse of discretion for the hearing officer to grant one or two continuances based on telephone messages of Officer Branco's "illness," we believe, in light of the statutory requirement for an expeditious hearing, that when Officer Branco left a third message that he was "ill," a red flag should have been raised and the hearing officer should have made an effort to verify whether Officer Branco was really ill (and not just tired from having worked the night shift) and whether Officer Branco could provide his testimony by telephone [6] or other means.

The Director alleges that even if the hearing officer disregarded the statutory mandate for an expeditious hearing, Robison suffered no substantial detriment because his temporary permit to drive was continued until the hearing was finally held and Robison thus "enjoyed uninterrupted driving privileges." We disagree.

The record reveals that Robison did everything within his power to ensure that the hearings could proceed expeditiously. Additionally, Robison incurred much expense, inconvenience, and uncertainty regarding his status as a result of the continued hearings. Not only did he incur the expense of serving and re-serving subpoenas for each hearing, he also had to rearrange his schedule to be present at each hearing and pay fees for his attorney to be present at each hearing as well. Robison thus suffered substantial detriment as a result of the hearing officer's granting of the continuances without first determining that the specific facts underlying Officer Branco's general statement constituted "good cause" to support the continuances.

D. *Robison's Due Process and Statutory Rights Were Violated When the Hearing Officer Held the Fourth Hearing and Precluded Robison from Cross-examining Officer Branco.*

 "A driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license." *Kernan v. Tanaka*, 75 Haw. 1, 21, 856 P.2d 1207, 1218 (1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Moreover, HRS § 286–259(g) explicitly provides that

> [u]pon notice to the [D]irector no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the [D]irector *shall* issue a subpoena for the official to appear at the hearing. If the official 'cannot appear, the official may at the discretion of the [D]irector testify· by telephone.

(Emphasis added.) In *Kernan*, the supreme court upheld the constitutionality of the administrative hearing process for reviewing the administrative revocation of a driver's license because

> Hawai'i's procedure allows the arrestee to correct any mistakes that may have been made by the [D]irector as well as to challenge the reports and statements presented against him. *See* HRS §§ 286–258(f) and 259(d). The arrestee is also given the opportunity to confront those who submitted statements and reports. *Id.* These procedures provide a reasonable and reliable basis for ascertaining the facts.

*Id.* at 27–28, 856 P.2d at 1221.

In this case, Robison properly exercised his due process and statutory rights to subpoena Officer Branco, the arresting officer, to appear at the four scheduled hearings. Robison was entitled, in preparing his defense, to have Officer Branco present, either personally or telephonically, at the hearings. Moreover, Robison appeared for each of the four administrative hearings and was ready to "examine" Officer Branco each time. When Officer Branco left a message prior to the fourth hearing that he would be unable to

---

**6.** HRS § 286–259(g) (Supp.1999) specifically provides for testimony by telephone *at the discretion of the Director:*

> The sworn statements provided in section 286–257 shall be admitted into evidence. Upon notice to the [D]irector no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the [D]irector *shall* issue a subpoena for the official to appear at the hearing. *If the official cannot appear, the official may at the discretion of the [D]irector testify by telephone.*
>
> (Emphases added.)

testify because he would be in the 'Ewa District Court, the hearing officer, upon Robison's objection to any further continuances, did not determine that good cause existed for a continuance and, instead, proceeded with the fourth hearing as scheduled.

The Director was not represented by counsel at the hearing. However, the hearing officer received into evidence numerous documents, including the arrest report of Officer Branco. Because Officer Branco was not present, Robison was unable to question the officer about his report and the underlying arrest. Under these circumstances, we conclude that Robison was denied his due process and statutory rights to examine "a law enforcement official who made a sworn statement[.]"

## CONCLUSION

In light of the foregoing discussion, we vacate the district court's Decision and Judgment and remand this case to the district court with instructions that it reverse the Director's September 8, 1998 Findings of Fact, Conclusions of Law and Decision. *See Simmons v. Administrative Director*, 88 Hawai'i 55, 67, 961 P.2d 620, 632 (1998); HRS § 286–260(d) (Supp.1999).