11 P.3d 457

**Robert D. FARMER, Petitioner–Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF the COURT, STATE OF HAWAI'I, Respondent–Appellee.**

No. 22849.

Supreme Court of Hawai'i.

Oct. 18, 2000.

**234**

Jonathan E. Burge, Craig T. Kimsel, and R. Patrick McPherson, Honolulu, (of Jonathan Burge & Associates), on the briefs, for petitioner-appellant.

Wayne A. Matsuura, Deputy Attorney General, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

Arrestee [1]-petitioner-appellant Robert D. Farmer appeals from the judgment and order of the district court affirming the revocation of his driver's license by the Administrative Driver's License Revocation Office (ADLRO) pursuant to the License Revocation Act, HRS ch. 286, part XIV (1993 & Supp.1999). In accordance with HRS § 286–261 (1993 & Supp.1999),[2] ADLRO sustained the automatic administrative revocation of Farmer's driver's license for life. The lifetime revocation was predicated upon three prior convictions for driving under the influence of alcohol (DUI) within the past ten years. Farmer filed a petition for judicial review in the district court, and, on August 18, 1999, the district court affirmed the administrative revocation. On appeal, Farmer argues that the district court erred in affirming the lifetime revocation of his license because (1) ADLRO had abused its discretion by denying Farmer's motion for continuance where Farmer presented evidence that a motion to set aside his guilty plea challenging the validity of one of his prior DUI convic-

---

1. For the purposes of the Administrative Driver's License Revocation Act (the License Revocation Act), the term "arrestee" includes, *inter alia*, any person arrested for driving under the influence of alcohol. Hawai'i Revised Statutes (HRS) § 286–251 (1993 & Supp.1999).

2. HRS § 286–261(b) provides in pertinent part:

The periods of administrative revocation that may be imposed under this part are as follows:

. . . .

(4) For life if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest[.]

tions was pending in the district court and (2) he had submitted evidence that one of his prior convictions was set aside subsequent to ADLRO's decision, and, thus, the evidence no longer supported his lifetime revocation.

For the reasons set forth below, we vacate the judgment affirming Farmer's lifetime revocation and remand this case to the district court.

## I. *BACKGROUND*

Following Farmer's April 16, 1999 arrest for DUI, in violation of HRS § 291–4 (1993 & Supp.1999),[3] the administrative director of the courts (the Director) automatically revoked Farmer's license for life pursuant to HRS § 286–261(b)(4). Farmer requested an administrative hearing to review the automatic revocation. On May 26, 1999, less than two hours before the administrative hearing took place, Farmer filed a motion in the district court to set aside a 1989 DUI conviction on the grounds that the conviction was based on an unconstitutionally accepted guilty plea. At the ADLRO hearing, Farmer requested a continuance of the proceedings until the district court ruled on Farmer's motion to set aside his 1989 conviction. Farmer argued that the continuance should be granted because: (1) if Farmer succeeded in setting aside his 1989 conviction, he would be subject to a shorter period of revocation; (2) Farmer would be unable to drive beyond the current term of his temporary license, regardless of when the district court issued a ruling, insofar as a continuance would not

extend Farmer's temporary driving permit; and (3) the State would suffer no prejudice by awaiting a ruling on the pending motion. ADLRO denied the continuance.

On June 1, 1999, ADLRO entered its decision sustaining Farmer's lifetime revocation, which included the following finding of fact:

> 7. The Arrestee's prior driving record in the State of Hawai'i shows three prior alcohol enforcement contacts, as defined by HRS § 286–251 [ (1993 & Supp.1999)[4]], from the State of Hawai'i traffic violator database, TRAVIS, in the ten years preceding the date of this arrest, April 16, 1999. The three contacts are HRS § 291–4 DUI driver's license suspensions.

In a footnote, ADLRO suggested that Farmer's revocation period could be adjusted if one of his convictions was set aside:

> Counsel believes that the first prior alcohol enforcement contact of 07–28–1989 will be set aside by the District Court. *If that happens then the Arrestee will have two prior alcohol enforcement contacts within seven years of the date of the current arrest and the appropriate period of revocation would be two years.* The instant period of revocation is based on the record (with three prior alcohol enforcement contacts) as it stands at the Hearing, *see Van Gundy v. ADC,* JR 98–0050, decided 10–19–1998, amended 11–23–1998.[5]

(Emphasis added.)

On June 15, 1999, Farmer's motion to set aside his 1989 guilty plea was granted, and,

---

**3.** HRS § 291–4 provides in pertinent part:

> (a) A person commits the offense of driving under the influence of intoxicating liquor if:
> (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
> (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

**4.** HRS § 286–251 provides in pertinent part:

> "Alcohol enforcement contact" means ... any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

**5.** The ADLRO hearing officer suggested that ADLRO might be able to provide relief to Farmer by amending the period of revocation if and when ADLRO received notice that a prior conviction forming the basis for a revocation had been set aside:

> HEARING OFFICER: All right. Counsel, I've recently done a similar [case] under similar circumstances and what I've done is followed the— I'm sorry, ... *Van Gundy* [, a district court case] decided this year[,] ... where ... the appropriate way to do this is for this office to take note of

on that same day, Farmer filed a petition for judicial review of the ADLRO decision in the district court. ADLRO received notice of the district court's order setting aside the guilty plea from Farmer's counsel on June 17, 1999, but refused to amend the lifetime revocation, citing strict compliance with HRS § 286–261 because Farmer's DUI record contained three prior DUI convictions at the time of the revocation. ADLRO also claimed divesture of jurisdiction following Farmer's appeal.

On appeal to the district court, Farmer argued that (1) ADLRO abused its discretion in denying his request for a continuance because (a) the request was based on "good cause" and (b) the denial of a continuance deprived Farmer of due process; and (2) the lifetime revocation order must be reversed or amended because one of Farmer's prior convictions was set aside.[6] The district court affirmed ADLRO's revocation order on August 18, 1999. Farmer timely appealed.

## II. STANDARDS OF REVIEW

### A. Administrative Agency Decision

Judicial review of a decision of the Director regarding the revocation of a driver's license is governed by HRS § 286–260, and is limited to the record of the administrative hearing and the questions whether the Director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious. manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record. *Kernan v. Tanaka*, 75 Haw. 1, 20, 856 P.2d 1207, 1217 (1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

"Review of a decision made by [a] court upon its review of an [administrative] decision is a secondary appeal. The standard of review is one in which this court must determine whether the court [under review] was right or wrong in its decision[.]" *University of Hawai'i ·Professional Assembly v. Tomasu*, 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995) (citations and quotation signals omitted).

*Gray v. Administrative Director of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586, (1997) (footnote omitted).

### B. Statutory Interpretation

The interpretation of a statute is a question of law that this court reviews *de novo*. *Konno v. County of Hawai'i*, 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997).

Moreover, where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. Put differently, a statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to

the three official prior alcohol enforcement contacts[.]

And ... [the district court] sets it out that there should be no appeals, so that this office does not lose jurisdiction. Then upon receipt of the first [conviction being set aside], [the district court] said that we should so adjust the revocation period.

**6.** The Director contends that the record on appeal is incomplete because it does not include a transcript of the district court proceedings. Although no district court transcript is included in the record on appeal, the district court transcripts are not necessary to the disposition of this appeal because (1) the arguments on appeal to this court were presented to the district court in its brief in support of the' petition for judicial review and (2) the district court's order specifically rejected all the arguments presented therein.

ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Id.* (citing *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995) (internal quotation marks omitted)).

### C. *Constitutional Law*

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *Gardens at West Maui Vacation Club v. County of Maui*, 90 Hawai'i 334, 339, 978 P.2d 772, 777 (1999) (citation and internal quotation marks omitted).

### III. *DISCUSSION*

#### A. *Denial of Continuance*

Farmer contends that the district court erred in affirming his lifetime revocation because: (1) ADLRO had abused its discretion by denying Farmer's request for a continuance pending the district court's ruling on his challenge to a prior DUI conviction; and (2) ADLRO's denial of his request for a continuance deprived Farmer of his constitutional right to due process. The Director argues that ADLRO properly exercised its discretion in denying Farmer's motion for continuance because Farmer failed to show good cause and did not timely file his motion to set aside his prior conviction.

■ This court has recognized that an ADLRO hearing officer has discretionary authority to grant or deny a continuance of a driver's license revocation hearing. *Norton v. Administrative Director of the Court*, 80 Hawai'i 197, 201, 908 P.2d 545, 549 (1995). Generally, to constitute an abuse of discretion, a tribunal must have clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. *Id.* (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

■ HRS § 286–259(j) (Supp.1999) provides that, "[f]or good cause shown, [ADLRO] may grant a continuance[.]" As a general rule, "good cause" is defined as "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *Robison v. Administrative Director of the Court*, 93 Hawai'i 337, 342, 3 P.3d 503, 508 (App.2000) (quoting *Miller v. Tanaka*, 80 Hawai'i 358, 363, 910 P.2d 129, 134 (App.1995), *cert. denied*, 80 Hawai'i 357, 910 P.2d 128 (1996) (internal quotation marks omitted).

■ At the ADLRO hearing, Farmer requested a continuance of the hearing until the district court ruled on the motion to set aside his prior conviction, noting that the lifetime revocation would remain in effect despite any continuances.[7] ADLRO denied Farmer's request for continuance, concluding that the record was complete, and suggesting that, if one of his prior convictions was later vacated, his remedy lay elsewhere.

■ Granting continuances based on speculation alone causes undue delay. In *Aspinwall v. Tanaka*, 9 Haw.App. 396, 843 P.2d 145 (1992), the ICA concluded that the legislative history of the License Revocation Act revealed an "'express desire' for the '[administrative revocation] process [to be] expeditious[,]' not to allow the continuance to be used 'to let cases drag on[,]' 'to administer this law properly and quickly[,]' to cause 'the use of a continuance beyond 30 days [to be] the unique exception[,]' and 'not [to] tolerate any lengthy delays in the hearing process[.]'" *Id.* at 404, 843 P.2d at 149 (citing 1990 Hawai'i Senate Journal, at 681–82 (statement of Sen. Salling) (some brackets added). Denying continuances that are based on speculation is consistent with the legislative intent behind the ADLRO statute, as well as our interests in judicial economy and finality. Moreover, allowing a continuance where the chances of overturning the prior conviction are admittedly speculative will encourage arrestees to exploit new dilatory tactics. As noted by ADLRO, Farmer

---

7. HRS § 286–259(j) provides that, "[i]f a continuance is granted at the request of the arrestee, the director shall not extend the validity of the temporary permit."

did not contest his conviction for ten years; he filed the motion to set aside his conviction only after he was notified that the Director had administratively revoked his license for life.

 HRS § 286–261(b)(4) provides that ADLRO may revoke a driver's license "[f]or life if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest." Where an arrestee is a member of the class of persons enumerated in HRS § 286–261(b)(4) and the written administrative record is not deficient in any respect, ADLRO has no statutory alternative but to impose an administrative license revocation "for life." *See Gray,* 84 Hawai'i at 162, 931 P.2d at 604. Based on the record before ADLRO, Farmer had been convicted of three prior DUI offenses within ten years of his most recent DUI arrest. Where a ruling on Farmer's motion before the district court to set aside one of these prior convictions was still pending, ADLRO properly refused to speculate as to the outcome.

 Farmer also argues that the denial of his request for a continuance deprived him of due process. In *Kernan v. Tanaka,* 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), this court recognized that "[a] driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license." *Id.* at 21–22, 856 P.2d at 1218. We next addressed whether the administrative revocation procedures set forth in the License Revocation Act met due process requirements:

> Accepting that a driver's license is a protected property interest, the issue becomes "what process is due to protect against erroneous deprivation of that interest." *Batchelder,* 463 U.S. at 1116–17, 103 S.Ct. 3513 (citing *Mackey,* 443 U.S. at 10), 99 S.Ct. 2612. Due process encompasses the opportunity to be heard at a meaningful time and in a meaningful manner. *Barry v. Barchi,* 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *see Evans v. Takao,* 74

Haw. 267, 282, 842 P.2d 255, 262 (1992); *Sandy Beach Defense Fund v. City Council,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see Evans,* 74 Haw. at 282, 842 P.2d at 262; *Sandy Beach,* 70 Haw. at 378, 773 P.2d at 261.

> The appropriate process due in a given situation:

>> requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the government's interest, including the function involved and the fiscal or administrative burdens that the additional procedures would entail.

> *Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893; *see Sandy Beach,* 70 Haw. at 378, 773 P.2d at 261, and *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 484, 497 P.2d 564, 571 (1972).

*Id.* at 22–23, 856 P.2d at 1218–19 (brackets in original) (some citations omitted). After balancing the factors listed above, we held that "the interest in a driver's license is not so great that more than an administrative review and hearing are needed to comport with the requirements of due process." *Id.* at 31, 856 P.2d at 1222.

 Farmer essentially contends that, because a motion to set aside one of his prior convictions was pending, ADLRO was required to grant his continuance to avoid the risk of erroneous deprivation of his license. Considering the private interest affected in this case, we recognize that a lifetime revocation implicates a serious deprivation of Farmer's interest in his driver's license. However, given the speculative nature of Farmer's motion to set aside his prior conviction at the time of the hearing, *see* discussion *supra,* there was no constitutionally significant increase in the risk of erroneous deprivation that would entitle Farmer to a continuance.

As recognized in *Kernan*, "[d]ue process does not require error-free determinations. Because the United States Supreme Court has found that presuspension hearings are not required for driver's license suspensions, Hawaii's procedures, which provide for such hearings, sufficiently assure reliable results and provide adequate due process." *Id.* at 28, 856 P.2d at 1221 (citation omitted). In addition, the governmental interest in an efficient administrative process outweighs the value of requiring ADLRO to grant continuances and allow delays based on speculation.

Based on the foregoing, we hold that, because the ADLRO properly considered the evidence before it at the time of the administrative hearing and imposed the statutorily mandated revocation period, the district court did not err in affirming ADLRO's denial of Farmer's request for a continuance. We next consider whether the district court erred in affirming ADLRO's decision *after* Farmer's 1989 DUI conviction was set aside.

### B. *Limitations on Judicial Review*

■ Farmer claims that the district court should have reversed or amended his revocation period because Farmer adduced evidence that, after the ADLRO decision, one of the prior convictions forming the basis for the lifetime revocation was set aside. The Director argues that:

> There is no statutory authority for the district court to alter the Administrative Director's revocation based on a prior conviction being overturned *after the administrative decision is rendered* because the overturning was not part of the original Administrative Director's record. HRS § 286–260(b) unambiguously limits the dis-

trict court's review to "the record of the administrative hearing *without taking of additional testimony or evidence*." (Emphasis added). Thus, the district court was barred from considering the subsequent overturning [of one of Farmer's three prior DUI convictions].

(Emphases in original.)

The relevant provisions of the License Revocation Act do not provide an opportunity to challenge a revocation decision at the administrative agency level if predicate prior convictions are later set aside. Although ADLRO suggested that Farmer may be entitled to request relief from ADLRO if he did not file an appeal and his conviction was later vacated, we have found no statutory authority under the License Revocation Act allowing ADLRO to consider new evidence and grant such relief. The question whether ADLRO should have the authority to reconsider or amend a revocation decision must be addressed by the legislature.

An examination of the License Revocation Act reveals that filing a petition for judicial review by the district court pursuant to HRS § 286–260 (1993 & Supp.1999) [8] is the only avenue for post-revocation relief provided by statute, and judicial review by the district court pursuant to HRS § 286–260 is limited to the record before ADLRO. As the Director correctly points out, under the express language of HRS § 286–260(b), the district court did not have the authority to consider new evidence on a petition for judicial review of ADLRO's revocation decision. *See also* HRS § 286–260(c); District Court Rules of Civil Procedure (DCRCP) Rule 72(h) (1999); *Gray*, 84 Hawai'i 138 at 144, 931 P.2d 580 at 586 (judicial review is limited to the record at

---

8. HRS § 286–260 provides in pertinent part:

(a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed.... The filing of the petition shall not operate as a stay of the administrative revocation nor shall the court stay the administrative revocation pending the outcome of the judicial review....

(b) The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing *without taking of additional testimony or evidence.* ...

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(d) The *court shall not remand the matter back to the director* for further proceedings consistent with its order.

(Emphases added.)

240

the time of the administrative hearing and the questions whether ADLRO exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record). Once the petition is filed, ADLRO is divested of jurisdiction, the revocation may not be stayed pending review, and HRS § 286–260(d) prohibits the district court from remanding the matter to ADLRO.[9] Thus, on Farmer's petition for judicial review pursuant to HRS § 286–260, the district court was precluded from considering the fact that one of Farmer's prior convictions was set aside after ADLRO's decision.

The foregoing provisions limiting judicial review and prohibiting remand to ADLRO were enacted to ensure that ADLRO "make a simple, quick and efficient determination whether to revoke a person's driver's license for [DUI,]" Sen. Stand. Comm. Rep. No. 2630, in 1996 Senate Journal, at 1225, so that dangerous drivers are taken off the public roads as soon as possible. See id.; Sen. Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 825–26. In promulgating these provisions, it appears that the legislature did not contemplate the situation presented here. If Farmer's record contained only two prior alcohol enforcement contacts, the maximum period of revocation ADLRO could have imposed would have been two years. HRS § 286–261(b)(3). Based on the revocation periods imposed by and the legislative history of the License Revocation Act, it is clear that the legislature intended to impose harsh penalties on repeat offenders with prior DUI convictions. See HRS § 286–261; see also Sen. Stand. Comm. Rep. No. 2630, in 1996 Senate Journal, at 1225; Sen. Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 825–26. However, we do not believe the legislature intended to deny arrestees an opportunity to challenge

or adjust a revocation period that is based upon an invalid conviction and, thus, no longer supported by the evidence.

The District Court Rules of Civil Procedure (DCRCP) also fail to provide Farmer an avenue for relief. In most proceedings before the district court, DCRCP Rule 60(b) (1999) provides for relief from a judgment or order of the district court where, inter alia: (1) there is newly discovered evidence; (2) a prior judgment upon which the judgment is based is vacated; (3) it is no longer equitable that the judgment have prospective application; or (4) any other reason is present that justifies relief from the operation of the judgment. However, DCRCP Rule 60(b) relief from judgment is not available to Farmer because the DCRCP are not applicable to petitions for judicial review from ADLRO. DCRCP Rule 81(a)(3)(1999) (providing that provisions of the DCRCP are not applicable to judicial review pursuant to DCRCP Rule 72, which governs judicial review of agency actions).

Nevertheless, "[w]e have held that, '[a]mong courts' inherent powers are the powers to create a remedy for a wrong even in the absence of specific statutory remedies[.]'" Carl Corporation v. Department of Education, 85 Hawai'i 431, 460, 946 P.2d 1, 30 (1997), reconsideration denied, 85 Hawai'i 431, 946 P.2d 1 (1997) (holding that, where the legislature failed to provide any statutory remedy for bad faith conduct on the part of the purchasing agency and the purposes of the procurement code support a remedy, the supreme court has the inherent power to provide a remedy entitling a protestor of the purchasing agency's decision to recover attorney's fees incurred in prosecuting its protest under certain circumstances); see also Richardson v. Sport Shinko (Waikiki Corporation), 76 Hawai'i 494, 507–08, 880 P.2d 169, 182–83 (1994) (holding that the trial court had the inherent power to fashion a remedy to cure prejudice suffered by one party as a

9. Subsection (d) of HRS § 286–260, prohibiting the district court from remanding matters to the ADLRO, was added in 1996. 1996 Haw. Sess. L. Act 230, § 4 at 527–28. Prior to the 1996 amendment, the Intermediate Court of Appeals held that, in the absence of a specific provision in HRS chapter 286, Part XIV limiting the manner of the district courts' dispositions, "the district court is vested with jurisdiction ... to remand the case to the ADLRO[.]" Miller v. Tanaka, order denying reconsideration of opinion, 80 Hawai'i 358, 370, 910 P.2d 129, 141 (App.1995), cert. denied, 80 Hawai'i 357, 910 P.2d 128 (1996).

result of another party's loss of critical evidence and that the trial court did not abuse its discretion in refusing to exercise that power). Discussing the nature of the inherent powers of the courts, this court has stated that

> Our constitution vests the "judicial power of the State" in the courts. Haw. Const. art. VI, s 1. Nowhere in that document is the exact nature of the "judicial power" defined, and we agree that the "essentially inherent or implied powers of the court are by their nature impracticable if not impossible of all-inclusive enumeration." But speaking generally, the "inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists."

*State v. Moriwake,* 65 Haw. 47, 55, 647 P.2d 705, 711-12 (1982) (citations omitted) (holding that the inherent power of the courts is properly invoked when a trial court sua sponte dismisses an indictment with prejudice following the declaration of one or more mistrials even though the defendant's constitutional rights are not yet implicated). Further, the inherent power of the supreme court is codified in HRS § 602-5(7), which acknowledge's this court's jurisdiction and power "[t]o make and award such judgments, decrees, orders and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it." In this case, justice requires that Farmer be given an opportunity to challenge the lifetime revocation of his driver's license because one of the three predicate convictions on which his revocation is based has been set aside. Providing such a remedy to Farmer is consistent with the purpose of the ADLRO statute to ensure a fair but efficient administrative process. Therefore, we hold that Farmer is entitled to have the district court amend his revocation period pursuant to HRS § 286-261 upon the presentation of proof that his driving record

no longer supports the revocation period imposed.

## IV. CONCLUSION

Based on the foregoing, we vacate the district court's judgment affirming Farmer's lifetime revocation and remand this case to the district court for further proceedings consistent with this opinion.

